UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------X
LLOYD GEORGE MORGAN, JR.,     :

Plaintiff,     :

v.     :     Civil Action No.:
     3:16-cv-00225 (VAB)

COMMISSIONER SCOTT S. SEMPLE,     :
ET AL.,
     :
Defendants.     :

------------------------------------------------------X     JUNE 21, 2019

## PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff Lloyd George Morgan, Jr. hereby submits his Second Amended Complaint (the "Amended Complaint") in accordance with the Court's Amended Scheduling Order dated May 15, 2019. This Amended Complaint asserts those claims allowed to proceed by the Court in accordance with its Initial Review Order dated August 23, 2016, namely, claims for retaliation, deliberate indifference to safety, violation of the right to privacy, violation of the right to free speech, and violation of equal protection. The Amended Complaint also asserts a claim for harassment pursuant to 42 U.S.C. §1983 and the Eighth Amendment, upon which Plaintiff seeks reconsideration, common law state claims of negligent and intentional infliction of emotional distress and additional claims against Commissioner Semple, Deputy Commissioner Rinaldi, Warden Santiago, Deputy Warden Zegarzewski, Captain Shebanas, and Unit Manager Conger.

As and for his Second Amended Complaint, plaintiff Lloyd George Morgan, Jr. alleges as follows:

1.     This is a civil rights action alleging violations of Plaintiff's federal constitutional rights as guaranteed in the First, Fourth, Eighth and Fourteenth Amendments to the Constitution

of the United States, 42 U.S.C. § 1983, and state law claims and seeks remedies for Defendants'

acts of retaliation against him, deliberate indifference to his safety, violation of his right to

privacy, violation of his right to free speech, violation of equal protection, harassment and

infliction of cruel and unusual punishment and negligent and intentional infliction of emotional

distress.  As a result of the actions of Defendants named in this Complaint, Plaintiff suffered

physical injuries, mental anguish, and severe emotional distress.

2.      Plaintiff alleges that the deprivations and violations of his constitutional rights

were carried out pursuant to the rules, policies, practices and procedures of Defendants acting

under color of state law.  Defendants are being sued in their individual and official capacities as

employees of the State of Connecticut Department of Corrections.

## I.      <u>Jurisdiction</u>

3.      This action arose and is brought pursuant to 42 U.S.C. § 1983 to remedy the

depravation, under color of law, of Plaintiff's rights guaranteed by the First, Fourth, Eighth and

Fourteenth Amendments to the United States Constitution.

4.       The Court has subject matter jurisdiction under 28 U.S.C. § 1331 in that this is a

civil action arising under the Constitution and laws of the United States.

5.      The Court has subject matter jurisdiction under  28 U.S.C. § 1343(a) in that this

action seeks to redress the deprivation, under color of state law, of rights secured by the

Constitution and Acts of Congress providing for equal rights of persons within the jurisdiction of

the United States.

6.      The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant

to 28 U.S.C. § 1367(a).

2151846

## II. Exhaustion of Available Remedies

7. Plaintiff has exhausted his administrative remedies in accordance with 42 U.S.C. § 1997(a) and (e).

## III. Parties

8. Plaintiff, Lloyd George Morgan, Jr., is an adult citizen of the State of Connecticut. At all times relevant to this Complaint, he was a sentenced inmate committed to the care of the Connecticut Department of Correction and was incarcerated at the Corrigan-Radgowski Corrections Center ("Corrigan-Radgowski") in Uncasville, Connecticut. Plaintiff suffers from various disabilities and health issues including type-two diabetes, mental and emotional disorders and a learning disability.

9. Defendant Scott S. Semple was, at all times relevant to this Complaint, the Commissioner of the State of Connecticut Department of Correction ("Department"). As Commissioner, Semple was responsible for overseeing and administering the policies, practices and procedures of the Department. He is being sued in his individual and official capacities. His address of employment is 24 Wolcott Hill Road, Wethersfield, CT 06109.

10. Defendant Monica Rinaldi was, at all times relevant to this Complaint, the Deputy Commissioner of Operations and Rehabilitative Services Division of the Department of Correction. As Deputy Commissioner of Operations, she was responsible for overseeing and administering the daily operation of the policies, practices and procedures of the Department. She is being sued in her individual and official capacities. Her employment address is 24 Wolcott Hill Road, Wethersfield, CT 06109.

11.     Defendant Antonio Santiago was, at all times relevant to this Complaint, the Warden of Corrigan-Radgowski Correction Center of the Connecticut Department of Correction. As Warden, he was responsible for overseeing and administering the policies, practices and procedures of the Department. He is being sued in his individual and official capacities. His address of employment was 24 Wolcott Hill Road, Wethersfield, CT 06109. Warden Santiago is currently at York Corrections Institution, 201 West Main Street, Niantic, CT 06357.

12.     Defendant Jeffrey Zegarzewski was, at all times relevant to this Complaint, the Deputy Warden of Programs and Treatment at Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction. As Deputy Warden, he was responsible for overseeing and administering the daily operation of the policies, practices and procedures of the Department. He is being sued in his individual and official capacities. His address of employment is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

13.     Defendant James Shebanas was, at all times relevant to this Complaint, a Captain at Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction. As Captain, he was responsible for overseeing and administering the daily operation of the policies, practices and procedures of the Department. He is being sued in his individual and official capacities. His address of employment is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

14.     Defendant Jeffrey Conger was, at all times relevant to this Complaint, a Unit Manager at the Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction. As Unit Manager, he was responsible for overseeing and administering the daily operation of the policies, practices and procedures of the Department. He is being sued in his

4

individual and official capacities. His address of employment is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

15.     Defendant Gary Rivard was, at all times relevant to this Complaint, a Corrections Officer at the Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction. He is being sued in his individual and official capacities. His address of employment is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

16.     Defendant Philip Comtois was, at all times relevant to this Complaint, a Corrections Officer at the Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction. He is being sued in his individual and official capacities. His address of employment is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

17.     Defendant Paul Senita was, at all times relevant to this Complaint, a Corrections Officer at the Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction. He is being sued in his individual and official capacities. His address of employment is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

18.     Defendant Thomas Weglarz was, at all times relevant to this Complaint, a Corrections Officer at the Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction. He is being sued in his individual and official capacities. His address of employment is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

19.     Defendant Scully was, at all times relevant to this Complaint, a Corrections Officer at the Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction. He is being sued in his individual and official capacities. His address of employment is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

2151846

20.     Defendant Brett Fulcher was, at all times relevant to this Complaint, a Corrections Officer at the Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction.  He is being sued in his individual and official capacities.  His address of employment is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

21.     Defendant Matthew Morin was, at all times relevant to this Complaint, a Corrections Officer at the Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction.  He is being sued in his individual and official capacities.  His address of employment is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

22.     Defendant Elizabeth Coursen was, at all times relevant to this Complaint, a psychologist assigned to work at the Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction.  She is an employee of the University of Connecticut Health Center contracted with the Connecticut Department of Correction.  She is being sued in her individual and official capacities.  Her address of employment for this lawsuit/Complaint is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

23.     Defendant Gina Higgins was, at all times relevant to this Complaint, an APRN Nurse assigned to work at the Corrigan-Radgowski Corrections Center of the Connecticut Department of Correction.  She is an employee of the University of Connecticut Health Center contracted with the Connecticut Department of Correction.  She is being sued in her individual and official capacities.  Her address of employment for this lawsuit/Complaint is 986 Norwich-New London Tpke., Uncasville, CT 06382-1928.

**IV.** **Facts**

24.      At all times relevant to this Complaint, Plaintiff was an inmate at Corrigan-Radgowski.  Plaintiff was housed at Corrigan-Radgowski from approximately October, 2014 to December, 2015.

25.      While housed at Corrigan-Radgowski, Plaintiff suffered retaliation and harassment at the hands of various Defendants for his participation in constitutionally protected activities, such as filing complaints and grievances against Defendants and other individuals. Defendants also violated Plaintiff's rights of privacy, free speech and equal protection, exhibited complete indifference to Plaintiff's safety and well-being, harassed and subjected Plaintiff to cruel and unusual punishment and caused Plaintiff to suffer physical injury and severe emotional distress.

26.      Based upon information and belief, Commissioner Semple, Deputy Commissioner Rinaldi, Warden Santiago, Deputy Warden Zegarzewski, Captain Shebanas, and Unit Manager Conger, either (1) directly participated in the violations of Plaintiff's constitutional and other rights set forth below, (2) failed to remedy the violations of Plaintiff's constitutional and other rights after they were brought to their attention, (3) created policies or customs under which the violations of Plaintiffs constitutional and other rights were allowed to occur, (4) were negligent or grossly negligent in training and/or supervising the corrections officers and others who violated Plaintiff's constitutional and other rights, or (5) failed to act in order to stop the violations of Plaintiff's constitutional or other rights after being advised of same.

### Harassment and Retaliation

27.      From approximately May through July 2015, while Plaintiff was housed in Unit C Block, Cell 111, Plaintiff filed complaints and grievances against Corrections Officer Barstow

7

and Corrections Officer Morin with their supervisors, Lieutenant Gillette, Captain Dougherty, Captain Williams, Deputy Warden Martin and Captain Shebenas, Deputy Warden Zegarzewski, and Warden Santiago, for engaging in unprofessional conduct, including but not limited to, turning the volume on the television in the inmates' day room to levels that made it difficult for Plaintiff to sleep.

28.     When Corrections Officer Barstow and Corrections Officer Morin learned of Plaintiff's complaints and grievances to their supervisors, they engaged in a pattern of retaliation and harassment against Plaintiff.

29.     For example, Corrections Officer Barstow and Corrections Officer Morin retaliated against Plaintiff by referring to Plaintiff as a "snitch" in the presence of other inmates with the full knowledge that such a reference would create an unsafe and dangerous environment for Plaintiff because the other inmates were likely to harm inmates who they viewed as informants.

30.     On one occasion, Plaintiff heard Corrections Officer Morin tell various inmates within Plaintiff's unit that Plaintiff "is a big fat rat and snitch" and to "fuck him up and get his ass out of the unit."  Corrections Officer Morin clearly sought to place Plaintiff in danger by his actions and to subject him to significant psychological harm.

31.     Although Corrections Officer Barstow and Corrections Officer Morin knew well that referring to an inmate as a "snitch" and a "rat" could cause grave danger to that inmate, they proceeded to refer to Plaintiff as a "snitch" and a "rat" in the presence of other inmates on several more occasions.

32.     In or about July 2015, Plaintiff also suffered retaliation from Corrections Officer Weglarz for engaging in the constitutionally protected activity of filing a complaint and

8

grievance against Corrections Officer Weglarz for, among other things, playing the television set in the inmates' day room at a volume that made it difficult for Plaintiff to fall asleep.

33. When Corrections Officer Weglarz learned about Plaintiff's complaint and grievance against him, he threatened Plaintiff and encouraged other officers to write false disciplinary reports against Plaintiff.

34. On one occasion, Corrections Officer Weglarz, in retaliation for Plaintiff filing a grievance and complaint against him with his superiors, issued a false disciplinary report —a Class B-Disobeying Direct Order—against Plaintiff which was dismissed by Corrections Officer Weglarz's superiors for lack of merit.

35. Plaintiff reported these acts of retaliation and harassment by Corrections Officer Weglarz to his superiors, Deputy Warden Zegarzewski and Warden Santiago. Deputy Warden Zegarzewski and Warden Santiago failed, however, to stop Corrections Officer Weglarz from his continued acts of retaliation and harassment against Plaintiff.

36. Additionally, Plaintiff made several complaints to Lieutenants Gillete and Iozzia and Captain Shebanas, Deputy Warden Zegarzewski, Warden Santiago, and Commissioner Semple regarding certain Corrections Officers' continued practice of turning the television in the inmates' day room to loud volumes that prevented Plaintiff from being able to sleep. Plaintiff repeatedly informed the corrections officers and others that volume of the television set caused him to suffer from extreme psychological distress and significant sleep deprivation seriously injuring Plaintiff's physical and mental well-being. However, the complaints fell on deaf ears as Defendants failed to take any steps to alleviate Plaintiff's concerns. In retaliation for these complaints, various officers improperly searched Plaintiff's property with the intent to cause Plaintiff harm or subject him to criminal charges.

2151846

37.     In or about August 2015, Plaintiff was housed in Unit A at Corrigan-Radgowski where Corrections Officer Morin was assigned.

38.     In an effort to get Plaintiff removed from the unit, Corrections Officer Morin, in concert with other Corrections Officers, threatened to plant contraband, including but not limited to, a knife or "shank", on Plaintiff or in his cell.

39.     Additionally, as he had done previously, Corrections Officer Morin referred to Plaintiff as a "snitch" and a "pedophile" to other inmates in the unit with the intention of endangering Plaintiff's safety and causing him psychological harm.

40.     Corrections Officer Morin engaged in this conduct as retaliation for the previous complaints and grievances that Plaintiff filed against him.

41.     In or about September 2015, Plaintiff was assigned to Restrictive Housing at Corrigan-Radgowski for engaging in the constitutionally protected activity of filing complaints against Corrections Officer Fulcher to his superior, Lieutenant Conger.

42.     While in Restrictive Housing, Plaintiff suffered acts of retaliation at the hands of Corrections Officer Fulcher.

43.     Plaintiff filed a complaint dated September 13, 2015 against Corrections Officer Fulcher with his supervisor, Lieutenant Conger, setting forth several instances of abuse of authority and ongoing harassment of Plaintiff by Corrections Officer Fulcher.

44.     Lieutenant Conger's response to Plaintiff's complaint was indifference, followed by blaming Plaintiff for the harassment and retaliation he had suffered at the hands of Corrections Officer Fulcher.

45.     In response to Plaintiff's complaint about Corrections Officer Fulcher, Lieutenant Conger stated, "I am not sure why you continue to stir up issues when there is not one.  Just

10

because you had your feelings hurt does not mean you can discredit these officers." According to Lieutenant Conger, Plaintiff's act of exercising his constitutional right to file a complaint against Corrections Officer Fulcher was akin to "stirring up trouble" in the unit.

46. Thereafter, Lieutenant Conger did nothing to prevent Corrections Officer Fulcher from his continued harassment and retaliation against Plaintiff. Emboldened by Lieutenant Conger's failure to act, Corrections Officer Fulcher continued his harassment and retaliation against Plaintiff. Corrections Officer Fulcher went so far as to retrieve Plaintiff's complaint and stomp upon it in Plaintiff's presence.

47. Plaintiff also suffered harassment and acts of retaliation at the hands of Corrections Officer Rivard, Corrections Officer Comtois, and Corrections Officer Senita. Corrections Officer Rivard, Corrections Officer Comtois, and Corrections Officer Senita referred to Plaintiff as a pedophile on multiple occasions to medical staff at Corrigan-Radgowski, other Corrections Officers, and other inmates within Plaintiff's unit in retaliation for Plaintiff's filing of complaints and grievances against them and other Corrections Officers at Corrigan-Radgowski.

48. The sole purpose for continually referring to Plaintiff as a "rat," "snitch" or a pedophile was to create an unsafe environment for Plaintiff as such a label in a prison would likely subject Plaintiff to a heightened risk of injury and violence against him.

49. Plaintiff reported these actions to Lieutenant Conger, Deputy Warden Zegarzewski, Warden Santiago, and Captain Shebanas but they failed to take any action to put a stop to the harassment and retaliation against Plaintiff.

50. From approximately August through December 2015, Corrections Officer Rivard, Corrections Officer Comtois, and Corrections Officer Senita also threatened physical violence

11

against Plaintiff and his family members and friends after learning that Plaintiff was preparing the instant lawsuit.

51.     Corrections Officer Rivard, Corrections Officer Comtois and Corrections Officer Senita on multiple occasions threated the physical safety of Plaintiff, his family and friends, if Plaintiff failed or refused to remove them as Defendants in the lawsuit.  These continued threats caused Plaintiff to suffer extreme emotional distress, anguish and anxiety. Plaintiff reported these threats to Lieutenant Conger, Captain Shebanas, Deputy Warden Zegarzewski and Warden Santiago, all of whom failed or refused to take steps to end the conduct of Corrections Officer Rivard, Corrections Officer Comtois and Corrections Officer Senita.

52.     During one such instance of physical threat, Corrections Officer Rivard, Corrections Officer Comtois and Corrections Officer Senita stated to Plaintiff that they had killed one of Plaintiff's sisters and had brutally assaulted another sister.  Because Plaintiff had limited ability to communicate with his family while incarcerated, he believed that Defendants had followed through on their threats and actually harmed his sisters.

53.     Without being able to confirm the safety of his family, Plaintiff lived in constant fear, anxiety and anguish about their health, safety and well-being.

54.     When Plaintiff could not get any of the supervising officers to stop the retaliation or prevent his continued harassment, Plaintiff wrote a letter to the Connecticut State Police outlining the threats of physical violence against him and his family.

55.     Corrections Officer Senita, along with other Corrections Officers, made further threats to the physical safety of Plaintiff after learning about his letter to the Connecticut State Police including further threats to kill Plaintiff's sisters.

2151846

56.     After repeated threats by Corrections Officer Rivard and Corrections Officer Comtois to kill both Plaintiff and his family, Plaintiff remarked that the conduct of Defendants was akin to that of "maniacs" and "Mafioso dons."  Defendants boasted in return and stated that "we are maniacs and 'Mafioso dons.'"

57.     Corrections Officer Senita, Corrections Officer Comtois, Corrections Officer Rivard and Corrections Officer Scully also stated on multiple occasions that they placed boric acid in Plaintiff's food.  Defendants told Plaintiff that the boric acid was because they believed Plaintiff was a rat for "snitching" on them.  Plaintiff believed that the boric acid was a lethal poison.

58.     Defendants made these threats while giving Plaintiff his food.  On multiple occasions, Plaintiff requested that his food be exchanged, but Defendants refused to grant his requests.

59.     On more than one occasion, Plaintiff became very sick after consuming food delivered by Defendants and also experienced burning sensations in both his throat and stomach.

60.     Corrections Officer Senita, Corrections Officer Comtois, Corrections Officer Rivard and Corrections Officer Scully on multiple occasions told Plaintiff they were subjecting him to harassment because they enjoyed preying on weak people.

61.     At about this same time, Plaintiff applied for and was eventually granted placement in protective custody.  While his application was pending, Corrections Officer Scully took several actions to try and undermine approval of the application for protective custody, including falsifying documents that stated Plaintiff was not competent for protective custody and telling other Corrections Officers that Plaintiff liked "little pee pees' implying that Plaintiff was a pedophile.  Plaintiff witnessed Corrections Officer Scully ask another Corrections Officer to

13

make an entry in a log book stating that Plaintiff was a pedophile. This was a further attempt to keep Plaintiff out of protective custody and to place him in danger.

62. Supervising Psychologist Coursen and Nurse Practioner Higgins acting in concert, filed falsified reports that claimed Plaintiff was a pedophile, the effect of which was that Plaintiff's previously granted protective custody was cancelled.

63. On or about October 5, 2015, Plaintiff had a meeting with Supervising Psychologist Coursen and Nurse Practioner Higgins with regard to his mental and physical health.

64. During this meeting, Plaintiff communicated to Supervising Psychologist Coursen and Nurse Practioner Higgins that he was not suicidal, but was the subject of harassment and retaliation on the part of several Corrections Officers.

65. Despite this clear message, Supervising Psychologist Coursen and Nurse Practioner Higgins acting in concert with Corrections Officer Rivard and Lieutenant Conger placed Plaintiff on level five suicide watch the effect of which was that Plaintiff was not allowed to use pens or pencils or have access to his legal mail. Defendants also threatened to cut off Plaintiff's penis and slice his throat if he continued filing complaints and grievances.

66. Defendants' purpose for placing Plaintiff on suicide watch, despite his clear indications that he was not suicidal, was to prevent Plaintiff from his continued prosecution of his lawsuit against Defendants or from filing further complaints or grievances against Defendants.

67. During his time at Corrigan-Radgowski, Plaintiff was assisted by certain Inmates' Legal Aid Program attorneys in connection with both this action and a separate lawsuit. Plaintiff was not satisfied with the representation by these attorneys and wrote various complaints against

the attorneys claiming that Plaintiff was being denied adequate and meaningful access to the courts.

68.     During the representation, Inmates' Legal Aid Program attorneys refused to assist Plaintiff with his lawsuits because certain Defendants, including Corrections Officer Rivard, Corrections Officer Comtois and Corrections Officer Senita, falsely told the attorneys that Plaintiff was a pedophile.

## Violation of Right to Privacy

69.     From on or about May to July 2015, Corrections Officer Morin, while Plaintiff visited the medical ward for diabetes testing, allowed other inmates within Plaintiff's unit to enter his cell and remove and read Plaintiff's personal and confidential legal documents.

70.     Plaintiff's confidential documents included incident reports Plaintiff had made to prison authorities regarding the conduct of suspected gang members within his unit, complaints and grievances Plaintiff had filed against some Defendants and other Corrections Officers, and Plaintiff's medical reports.  These also included various legal letters or documents associated with the case of Morgan v. Dzurenda, et al., Case No. 3:14-cv-00966 (VAB), and additional litigation which Plaintiff was contemplating.  By making these documents available to other inmates and Corrections Officers, Defendants showed a deliberate indifference to Plaintiff's safety and privacy.

71.     Plaintiff reported these acts of harassment and retaliation and violations of his privacy by Corrections Officer Morin to his superiors, Deputy Warden Zegarzewski, Captain Shebanas, and Warden Santiago.

72.     Deputy Warden Zegarzewski, Captain Shebanas, and Warden Santiago with full knowledge of Plaintiff's complaints, failed to reprimand Corrections Officer Morin and prevent

his continued harassment of and retaliation against Plaintiff, as well as violation of Plaintiff's privacy.

73.     In or about July 2015, Plaintiff once again, informed Deputy Warden Zegarzewski, Warden Santiago and Commissioner Semple about the continued playing of the day room television at extremely loud volumes.  These complaints upset the Corrections staff who yet again searched through Plaintiff's personal property.  Corrections Officer Rivard, Corrections Officer Comtois and Corrections Officer Senita even obtained a picture from Plaintiff's cell of a Mrs. Evelyn Gray and her family.  Plaintiff was also in the picture as these were friends of his from Church.

74.     Corrections Officer Rivard, Corrections Officer Comtois and Corrections Officer Senita showed the picture to Corrections Officer Williams who happened to be the sister of Mrs. Gray.  Defendants then told Corrections Officer Williams that Plaintiff was a pedophile.  This was done not only to disparage Plaintiff to Corrections Officer Williams, but also for the purpose of placing Plaintiff's life and safety in danger.

75.     In or about September 2015, while Plaintiff was assigned to Restrictive Housing, Corrections Officer Rivard, Corrections Officer Comtois and Corrections Officer Senita placed listening and recording devices and other technology in Plaintiff's cell in order to see and read his confidential legal documents and retrieve other private information.

76.     Plaintiff once again reported this conduct to Lieutenant Conger, Captain Shebanas, Deputy Warden Zegarzewski and Warden Santiago, all of whom took no action to protect Plaintiff's privacy.

## Violation of Equal Protection

77.     Plaintiff was also subjected to harassment and discrimination as a result of his sexual identity and orientation.  Plaintiff identifies as an openly gay man and he suffered discriminatory acts from Corrections Officer Fulcher as a result of his sexual identity and orientation.

78.     Corrections Officer Fulcher on several occasions made discriminatory remarks about Plaintiff's sexuality to him and in the presence of other inmates and Corrections Officers.

79.     In one particular instance, while Plaintiff was engaged in conversation with another inmate, Corrections Officer Fulcher shouted at Plaintiff, "you can't get shit from me you fucking homo, you faggot" for the express purpose of placing Plaintiff's safety in jeopardy and to harass and retaliate against Plaintiff.

80.     Corrections Officer Fulcher continued to direct discriminatory remarks toward Plaintiff in the presence of other inmates, by repeatedly referring to Plaintiff as a "fucking homo" and a "faggot" as well as on occasion, improperly entering Plaintiff's cell for the purpose of reading his confidential legal documents.

81.     Plaintiff reported the discriminatory acts to Corrections Officer Fulcher's superior, Lieutenant Conger, but Lieutenant Conger failed to take any steps to put a stop to the discriminatory treatment Plaintiff continued to suffer at the hands of Corrections Officer Fulcher.

82.     Plaintiff also reported Corrections Officer Fulcher's discriminatory actions towards him to Warden Santiago when Warden Santiago toured Plaintiff's segregation unit. Like Lieutenant Conger, Warden Santiago took no steps to put an end to the harassment and discriminatory acts that Plaintiff suffered at the hands of Corrections Officer Fulcher.

2151846

**<u>Violation of Freedom of Speech</u>**

83.    On several occasions Plaintiff also expressed his intent to use his allotted legal phone calls or other means of communication, to report the harassment and retaliation he was suffering to the Connecticut State Police, the United States Department of Justice and the FBI. However, his right to use his two legal phone calls or otherwise communicate was not granted.

84.    Plaintiff made several complaints about his inability to use his two legal phone calls or other means of communication to Commissioner Semple, Warden Santiago, and Deputy Commissioner Rinaldi, but Defendants failed to take any steps to address Plaintiff's concerns.

85.    Commissioner Semple, Warden Santiago, and Deputy Commissioner Rinaldi created rules and regulations, and policies and procedures that denied Plaintiff his right to his two legal phone calls a month or to otherwise communicate with judicial and law enforcement agencies.

**<u>Count One – Retaliation in Violation of the First Amendment</u>**

1-85.    Paragraphs 1 through 85 are realleged and incorporated by reference herein.

86.    Plaintiff brings a claim arising from retaliation in violation of the First Amendment against Defendants Rivard, Comtois, Senita, Weglarz, Scully, Fulcher, Morin, Coursen, Higgins, Conger, Shebanas, and Zegarzewski.

87.    Defendants retaliated against Plaintiff for filing complaints, grievances, and lawsuits against them by subjecting Plaintiff to verbal threats and harassment, including but not limited to labeling Plaintiff a snitch, rat, and pedophile as well as threatening the physical safety of Plaintiff, his family and friends.

2151846

88.     Defendants retaliated against Plaintiff for the express reason that he engaged in constitutionally protected activity such as filing complaints, grievances, and lawsuits against Defendants.  Defendants on more than one occasion, told Plaintiff to refrain from filing complaints, grievances, and lawsuits against them or they would continue their verbal threats and harassment of Plaintiff.  Defendants' retaliation against Plaintiff was proximate in time and a direct result of Plaintiff's pursuit of his constitutionally protected rights.

89.     Defendants' retaliation against Plaintiff as a result of his filing the complaints, grievances, and lawsuits against Defendants violated Plaintiff's rights under the First Amendment of the Constitution.

## Count Two – Violation of Freedom of Speech under the First Amendment

1-85.     Paragraphs 1 through 85 are realleged and incorporated by reference herein.

86.     Plaintiff attempted to engage in constitutionally protected activity by using his two legal calls or other means of communication to contact the FBI, Department of Justice and the Connecticut State Police to report the acts of harassment and retaliation he had suffered at the hands of Defendants and various Corrections Officers.  Plaintiff was prevented by Defendants from contacting these authorities by telephone or other means of communication. For instance, Plaintiff was prevented by Defendant Morin from contacting the State Police by letter.

87.     Defendants' Semple, Rinaldi, Santiago and Zegarzewski created policies and procedures that prevented Plaintiff from exercising his constitutionally protected right of reporting harassment and retaliation to the FBI, Department of Justice, and the Connecticut State Police.

88.     The actions of Defendants Morin, Semple, Rinaldi, Santiago and Zegarzewski were in direct violation of Plaintiff's freedom of speech under the First Amendment.

19

## Count Three – Deliberate Indifference to Safety in Violation of the Eighth Amendment

1-85.    Paragraphs 1 through 85 are realleged and incorporated by reference herein.

86.    Plaintiff brings a claim for deliberate indifference to safety against all Defendants named in the Complaint.

87.    Defendants Rivard, Comtois, Senita, Weglarz, Scully, Fulcher, Morin, Coursen and Higgins engaged in objectively serious conduct by referring to Plaintiff as a snitch, rat, and a pedophile on multiple occasions in the presence of other inmates.

88.    Defendants Rivard, Comtois, Senita, Weglarz, Scully, Fulcher, Morin, Coursen and Higgins had full knowledge that such a label in a prison environment would cause Plaintiff to face an excessive risk of harm to his health and safety.

89.    Defendants Rivard, Comtois, Senita, Weglarz, Scully, Fulcher, Morin, Coursen and Higgins placed such labels on Plaintiff for the express purpose of inciting other inmates to attack Plaintiff.

90.    Defendants Rivard, Comtois, Senita, Weglarz, Scully, Fulcher, Morin, Coursen and Higgins acted with malicious and or sadistic intent to cause harm to Plaintiff.

91.    Defendants Rivard, Comtois, Senita, Weglarz, Scully, Fulcher, Morin, Coursen and Higgins deliberately ignored the excessive risk to Plaintiff's safety as a result of labeling him a snitch, rat, or pedophile.

92.    Defendants Rivard, Comtois, Senita, Weglarz, Scully, Fulcher, Morin, Coursen and Higgins conduct demonstrated a deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment.

2151846

93.     As to Defendants Semple, Rinaldi, Santiago, Zegarzewski, Shebanas and Conger, these Defendants also demonstrated a deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment.

94.     Plaintiff on multiple occasions alerted Defendants' Semple, Rinaldi, Santiago, Zegarzewski, Shebanas and Conger to the excessive risk Plaintiff faced as a result of being labeled a "snitch," "rat" or pedophile.

95.     Defendants' Semple, Rinaldi, Santiago, Zegarzewski, Shebanas and Conger were aware of the excessive risk of harm the Plaintiff faced as a result of such labels.

96.     Despite this awareness, Defendants' Semple, Rinaldi, Santiago, Zegarzewski, Shebanas and Conger failed to act to stop Defendants Rivard, Comtois, Senita, Weglarz, Scully, Fulcher, Morin, Coursen and Higgins from referring to Plaintiff as a snitch, rat, and pedophile in the presence of other inmates.

97.     Defendants Semple, Rinaldi, Santiago, Zegarzewski, Shebanas and Conger failure to act constituted malicious and or sadistic intent to cause harm to Plaintiff in that they ignored the excessive risk to Plaintiff's health and safety as a result of Plaintiff being referred to as a snitch, rat, or pedophile.

98.     Defendants Semple, Rinaldi, Santiago, Zegarzewski, Shebanas and Conger's conduct demonstrated a deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment.

**Count Four – Denial of Equal Protection in Violation of the 14th Amendment and Connecticut General Statute § 46a-58**

1-85.     Paragraphs 1 through 85 are realleged and incorporated by reference herein.

86.     Plaintiff brings a claim for denial of equal protection against Defendant Fulcher, Conger and Santiago.

21

87. Plaintiff, who identifies as an openly gay man, was subjected to discriminatory treatment based on his sexual identity and orientation by Defendant Fulcher for engaging in his constitutionally protected right of filing complaints and grievances against Defendant Fulcher.

88. On more than one occasion, Defendant Fulcher referred to Plaintiff as a "homo" and a "faggot" for filing complaints and grievances against him.

89. Defendant Fulcher singled out Plaintiff for disparate treatment based entirely on his sexual identity and orientation which is a denial of equal protection under the 14th Amendment.

90. Defendants' Conger and Santiago were aware of Defendant Fulcher's violation of Plaintiff's equal protection and failed to take steps to curtail or prevent Fulcher's conduct.

**Count Five – Violation of the Right to Privacy**

1-85. Paragraphs 1 through 85 are realleged and incorporated by reference herein.

86. Plaintiff brings a claim for violation of his right to privacy against Defendants Morin, Rivard, Comtois, Senita, and Fulcher.

87. Plaintiff had a reasonable expectation of privacy with respect to his grievances, complaints, and legal documents located in his cell.

88. Defendants Morin, Rivard, Comtois, Senita, and Fulcher engaged in an unlawful search by stealing, reading, and distributing Plaintiff's grievances, complaints and legal documents.

89. The theft, reading, and distribution of Plaintiff's grievances, complaints and legal documents were an unconstitutional invasion of Plaintiff's reasonable expectation of privacy.

**Count Six – Harassment and Violation of the Eighth Amendment**

1-85. Paragraphs 1 through 85 are realleged and incorporated by reference herein.

2151846

86.     Plaintiff brings a claim for harassment against Defendants Rivard, Comtois, Senita, Weglarz, Scully, Fulcher, Morin, Coursen and Higgins.

87.     Defendants retaliated and harassed Plaintiff because he engaged in his constitutionally protected right of filing complaints and grievances against them.

88.     Defendants engaged in objectively serious conduct, by continually referring to Plaintiff as a snitch, rat, and a pedophile in the presence of other inmates.

89.     Defendants referred to Plaintiff as a snitch, rat, and a pedophile with the express knowledge that calling Plaintiff such names in a prison environment would pose an excessive risk to Plaintiff's health and safety.

90.     Despite the awareness of the excessive risk to Plaintiff's health and safety, Defendants with malicious and/or sadistic intent, referred to Plaintiff as a snitch, rat, and a pedophile, with the express purpose of inciting other inmates to attack Plaintiff.

91.     As a result of Defendants actions, Plaintiff experienced extreme emotional psychological harm because he was in constant fear of being attacked by other inmates.

92.     On other occasions, Defendants threatened the physical safety of Plaintiff and that of his family and friends.

93.     Due to Plaintiff's inability to communicate with his family and friends while incarcerated, he was in constant fear for their safety as he believed that Defendants as correctional officers had the power to carry out the threats to Plaintiff's family and friends.

94.     The actual or threatened placement of boric acid in Plaintiff's food also caused him to suffer severe illness including, but not limited to, the burning of his throat and stomach.

95.     Defendants intentionally inflicted emotional and psychological pain on Plaintiff because he engaged in his constitutionally protected right of filing complaints and grievances against them.

96.     The severe emotional and psychological harm that Plaintiff suffered was caused by Defendants' repeated harassment of Plaintiff and constitutes cruel and unusual punishment under the Eighth Amendment.

**Count Seven – Intentional Infliction of Emotional Distress**

1-85.   Paragraphs 1 through 85 are realleged and incorporated by reference herein.

86.     Plaintiff brings a claim for intentional infliction of emotional distress against all Defendants.

87.     Defendants' conduct as alleged at length herein above constitutes intentional infliction of emotional distress as Defendants' intended to inflict emotional distress upon Plaintiff, acted with reckless disregard of the consequences of their actions, or knew or should have known that emotional distress to Plaintiff was a likely result of their conduct.

88.     Defendants' conduct was extreme and outrageous in that the conduct subjected Plaintiff to severe emotional and psychological harm.

89.     As a result of Defendants' conduct, Plaintiff did suffer extreme emotional distress, anxiety, anguish and fear, all of which manifested themselves mentally, emotionally, and physically.

**Count Eight – Negligent Infliction of Emotional Distress**

1-85.   Paragraphs 1 through 85 are realleged and incorporated by reference herein.

86.     Plaintiff brings a claim for negligent infliction of emotional distress against all Defendants.

87.     Defendants' conduct as alleged at length herein above constitutes negligent infliction of emotional distress as Defendant created unreasonable risk of causing emotional distress to Plaintiff, and that such emotional distress likely would result in injury, illness or bodily harm to Plaintiff.

88.     As a result of Defendants' conduct, Plaintiff did suffer extreme emotional distress, anxiety, anguish and fear, all of which manifested themselves mentally, emotionally, and physically.

### Count Nine – Violations of Counts One through Eight by Defendants' Semple, Rinaldi, Santiago, Zegarzewski, Shebanas and Conger

1-85.     Paragraphs 1 through 85 are realleged and incorporated by reference herein.

86.     Commissioner Semple, Deputy Commissioner Rinaldi, Warden Santiago, Deputy Warden Zegarzewski, Captain Shebanas, and Unit Manager Conger engaged in conduct in violation of Counts One through Eight by either

   a.  (1) directly participating in the violations of Plaintiff's constitutional and other rights,

   b.  (2) failing to remedy the violations of Plaintiff's constitutional and other rights after they were brought to their attention,

   c.  (3) creating policies or customs under which the violations of Plaintiffs constitutional and other rights were allowed to occur,

   d.  (4) were negligent or grossly negligent in training or supervising the corrections officers and others who violated Plaintiff's constitutional and other rights, or

   e.  (5) failing to act in order to stop the violations of Plaintiff's constitutional or other rights after being advised of same.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court award him:

    A.  Compensatory damages in an amount this Court shall consider to be just and fair;

    B.  Punitive damages in an amount this Court shall consider to be just and fair;

    C.  Attorney's fees and costs incurred as a result of this lawsuit pursuant to the Attorneys' Fees Award Act (42 U.S.C. § 1988) and other applicable laws; and

    D.  Such other relief as this Court shall consider to be fair and equitable.

**Jury Demand**

Plaintiff requests a trial by jury of all issues and claims triable by a jury.

Plaintiff,
Lloyd George Morgan, Jr.

By:    */s/ Richard M. Dighello, Esq.*
     Richard M. Dighello, Esq.
     Federal Bar No. ct17521
     UPDIKE, KELLY & SPELLACY, P.C.
     100 Pearl Street, P.O. Box 231277
     Hartford, CT 06123-1277
     Telephone:  860-548-2600
     Facsimile:  860-548-2680
     Email: rdighello@uks.com

2151846