## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LLOYD GEORGE MORGAN, JR.,
*Plaintiff*,

v.

SCOTT SEMPLE, *et al.*,
*Defendants.*

No. 3:16-cv-225 (VAB)

**RULING AND ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Lloyd George Morgan, Jr. ("Plaintiff") has sued Commissioner Scott Semple, Deputy Commissioner Monica Rinaldi, Warden Antonio Santiago, Deputy Warden Jeffrey Zegarzewski, Captain James Shebanas, and Unit Manager Jeffrey Conger, Corrections Officer Gary Rivard, Corrections Officer Philip Comtois, Corrections Officer Paul Senita, Corrections Officer Thomas Weglarz, Corrections Officer Brett Fulcher, Corrections Officer Matthew Morin,  Corrections Officer Scully, Elizabeth Coursen, and APRN Gina Higgins in their individual and official capacities under 42 U.S.C. § 1983 for retaliation, deliberate indifference to safety, violation of the right to privacy, violation of the right to free speech, and violation of the equal protection clause. Second Am. Compl., ECF No. 96 at 1 (June 21, 2019) ("Second Am. Compl.").

Defendants have filed a motion to dismiss Plaintiff's second amended Complaint. Mot. to Dismiss, ECF No. 114 (Oct. 21, 2019) ("Mot.").

For the following reasons, the motion is **GRANTED in part and DENIED in part**.

The Court **DENIES** the motion to dismiss as to Mr. Morgan's claims for First Amendment retaliation against Defendants Morin, Rivard, Comitos, Senita, Weglarz, Scully, Conger, Coursen, and Higgins; the deliberate indifference claim against Defendants Rivard, Comitos, Senita, Scully, Fulcher, Morin, Coursen, Higgins, Semple, Rinaldi, Santiago,

Zegarzewski, Shabanas, and Conger; the claim of supervisory liability against Defendants Semple, Rinaldi, Santiago, Zegarzewski, Shebanas, and Conger; and the Fourteenth Amendment equal protection claim.

The Court **GRANTS** the motion to dismiss as to the Fourth Amendment claim; the claim for negligent infliction of emotional distress; and the claim for intentional infliction of emotional distress against Defendants Rivard, Comtois, Senita, Weglarz, Scully, Fulcher, Morin, Coursen, and Higgins.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

From approximately October 2014 to December 2015, Mr. Morgan was incarcerated at the Corrigan-Radgowski Corrections Center ("Corrigan-Radgowski") in Uncasville, Connecticut. Second Am. Compl. ¶¶ 8, 24. He allegedly suffers "from various disabilities and health issues including type-two diabetes, mental and emotional disorders and a learning disability." *Id.*

From approximately May to July 2015, Mr. Morgan allegedly "was housed in Unit C Block, Cell 111[.]" *Id.* ¶ 27. He allegedly filed various complaints and grievances against Corrections Officers Barstow and Morin with their supervisors, Lieutenant Gillete, Captain Dougherty, Captain Williams, Deputy Warden Martin, Captain Shebenas, Deputy Warden Zegarzewski, and Warden Santiago "for engaging in unprofessional conduct, including but not limited to, turning the volume on the television in the inmates' day room to levels that made it difficult for Plaintiff to sleep." *Id.*

After learning of the grievances, Corrections Officers Bartsow and Morin allegedly "engaged in a pattern of retaliation and harassment" against Mr. Morgan. *Id.* ¶ 28. The retaliation

allegedly included referring to Mr. Morgan "as a 'snitch' in the presence of other inmates with the full knowledge that such a reference would create an unsafe and dangerous environment . . . because the other inmates were likely to harm inmates" believed to be informants. *Id.* ¶ 29.

Mr. Morgan allegedly once overheard Corrections Officer Morin tell other inmates in Mr. Morgan's cell unit that he was "'a big fat rat and snitch' and to 'fuck him up and get his ass out of the unit.'" *Id.* ¶ 30. Morgan alleges that Corrections Officers Barstow and Morin knew "that referring to an inmate as a 'snitch' and a 'rat' could cause grave danger[,]" but repeated these phrases in front of other inmates on multiple occasions. *Id.* ¶ 31.

On or around July 2015, Corrections Officer Weglarz allegedly retaliated against Mr. Morgan for filing a complaint and a grievance "for, among other things, playing the television set in the inmates' day room at a volume that made it difficult for Plaintiff to fall asleep." *Id.* ¶ 32. He allegedly threatened to and encouraged "other officers to write false disciplinary reports against" Mr. Morgan. *Id.* ¶ 33. On one occasion, Corrections Officer Weglarz allegedly "issued a false disciplinary report" in retaliation; the report ultimately was dismissed for lack of merit. *Id.* ¶ 34. Mr. Morgan allegedly reported the retaliation and harassment to Deputy Warden Zegarzewski and Warden Santiago, who allegedly failed "to stop Corrections Officer Weglarz from his continued acts of retaliation and harassment[.]" *Id.* ¶ 35.

Mr. Morgan allegedly made several complaints to Lieutenants Gillete and Iozzia, Captain Shebanas, Deputy Warden Zegarzewski, Warden Santiago, and Commissioner Semple about corrections officers' "continued practice of turning the television in the inmates' day room to loud volumes[,]" thus preventing Mr. Morgan from sleeping. *Id.* ¶ 36. These practices allegedly resulted in Mr. Morgan suffering "from extreme psychological distress and significant sleep deprivation[,]" which affected his physical and mental well-being. *Id.* The complaints allegedly

caused further retaliation. *Id.* "[V]arious officers [allegedly] improperly searched [Mr. Morgan's] property with the intent to cause [him] harm or subject him to criminal charges." *Id.*

On or around August 2015, Mr. Morgan "was housed in Unit A[.]" *Id.* ¶ 37. Corrections Officer Morin allegedly was assigned to the same unit. *Id.* With the help of others, Corrections Officers Morin "threatened to plant contraband," like a knife or a "shank," in Mr. Morgan's cell, in order to get him removed from Unit A. *Id.* ¶ 38. Again, Corrections Officer Morin allegedly referred to him as a "snitch" and "pedophile" in front of other inmates. *Id.* ¶ 39. Mr. Morgan believes this was done "as retaliation for the previous complaints and grievances" filed, *id.* ¶ 38, and "with the intention of endangering [his] safety and causing him psychological harm," *id.* ¶ 39.

On or around September 2015, Mr. Morgan allegedly "was assigned to [the] Restrictive Housing [Unit] at Corrigan-Radgowski[,]" allegedly for filing complaints about Corrections Officer Fulcher to Lieutenant Conger. *Id.* ¶ 41. Corrections Officer Fulcher allegedly retaliated against Mr. Morgan. *Id.* ¶ 42. On September 13, 2015, Mr. Morgan filed a complaint with Lieutenant Conger, allegedly "setting forth several instances of abuse of authority and ongoing harassment" by Corrections Officer Fulcher. *Id.* ¶ 43. Lieutenant Conger allegedly acted indifferently and blamed Mr. Morgan for the harassment and retaliation he had endured. *Id.* ¶ 44. Lieutenant Conger allegedly said, "I am not sure why you continue to stir up issues where there is not one. Just because you had your feelings hurt does not mean you can discredit these officers." *Id.* ¶ 45.

Lieutenant Conger allegedly "did nothing to prevent" continued harassment and retaliation from Corrections Officer Fulcher. *Id.* ¶ 46. The harassment and retaliation continued,

and "Corrections Officer Fulcher [allegedly] went so far as to retrieve Plaintiff's complaint and stomp" on it in front of Mr. Morgan. *Id.*

Corrections Officers Rivard, Comtois, and Senita allegedly harassed and retaliated against Mr. Morgan as well. *Id.* ¶ 47. All three allegedly referred to him as a pedophile to medical staff, other corrections officers, and other inmates on multiple occasion in retaliation for the complaints and grievances Mr. Morgan had filed against them. *Id.* In his opinion, "[t]he sole purpose for continually referring to [Mr. Morgan] as a 'rat,' 'snitch' or pedophile was to create an unsafe environment for [him]" which "would likely subject [him] to a heightened risk of injury and violence . . . . " *Id.* ¶ 48.

Even though Mr. Morgan allegedly had reported all of this to Lieutenant Conger, Deputy Warden Zegarzewski, Warden Santiago, and Captain Shebanas, they allegedly "failed to take any action to" end the harassment and retaliation. *Id.* ¶ 49.

In addition, Corrections Officers Rivard, Comtois, and Senita allegedly "threatened physical violence against [Mr. Morgan] and his family members and friends after learning" of Mr. Morgan's intent to file the instant lawsuit. *Id.* ¶ 50. He alleges they threatened his physical safety and the safety of his friends and family on multiple occasions, unless Mr. Morgan removed them as Defendants from the lawsuit. *Id.* ¶ 51. The threats allegedly were reported to Lieutenant Conger, Captain Shebanas, Deputy Warden Zegarzewski, and Warden Santiago, all of whom allegedly did nothing. *Id.* Mr. Morgan alleges he suffered "extreme emotional distress, anguish and anxiety" as a result. *Id.*

One of the physical threats made by Corrections Officers Rivard, Comtois, and Senita included allegedly telling Mr. Morgan "that they had killed one of [his] sisters and [] brutally assaulted another sister." *Id.* ¶ 52. With a limited ability to communicate to his family, Mr.

Morgan alleges he believed the corrections officers. *Id.* This allegedly caused him to live "in constant fear, anxiety and anguish about [the] health, safety, and well-being" of his family. *Id.* ¶ 53. Mr. Morgan alleges he "wrote a letter to the Connecticut State Police outlining the threats of physical violence against him and his family[,]" after supervising officers did nothing. *Id.* ¶ 54.

After Mr. Morgan sent the letter to Connecticut State Police, Corrections Officer Senita, with other corrections officers, allegedly "made further threats to the physical safety of [Mr. Morgan] . . . including further threats to kill [his] sisters." *Id.* ¶ 55. After the repeated threats, Mr. Morgan allegedly called Corrections Officers Rivard and Comtois "maniacs" and "mafioso dons[,]" to which they replied "we are maniacs and 'Mafioso dons.'" *Id.* ¶ 56.

Corrections Officers Senita, Comtois, Rivard, and Scully also allegedly "stated on multiple occasions that they placed boric acid in [Mr. Morgan's] food." *Id.* ¶ 57. They allegedly told him this "was because they believed [Mr. Morgan] was a rat for 'snitching' on them." *Id.* Mr. Morgan alleges he thought "that the boric acid was a lethal poison." *Id.* The threats allegedly were made while Mr. Morgan received his food. *Id.* ¶ 58. Mr. Morgan allegedly would request that his food be exchanged, but the corrections officers "refused to grant his requests." *Id.* Mr. Morgan alleges that on more than one occasion he "became very sick after consuming food delivered by Defendants and also experienced burning sensations in [] his throat and stomach." *Id.* ¶ 59. The corrections officers allegedly told him on multiple occasions that "they were subjecting [Mr. Morgan] to harassment because they enjoyed preying on weak people." *Id.* ¶ 60.

Mr. Morgan eventually applied for and was placed in protective custody. *Id.* ¶ 61. While his application allegedly was pending, Corrections Officer Scully attempted to "undermine approval of [his] application . . . [by] falsifying documents that stated [he] was not  competent for protective custody and telling other Corrections [Officers] that [Mr. Morgan] liked 'little pee

pees' implying that [he] was a pedophile." *Id.* Mr. Morgan alleges he witnessed Corrections

Officer Scully ask another corrections officer "to make an entry in a log book stating that [he]

was a pedophile." *Id.* Dr. Coursen, the supervising psychologist, and Nurse Higgins allegedly

"act[ed] in concert [and] filed falsified reports that claimed [Mr. Morgan] was a pedophile,"

which resulted in the revocation of Mr. Morgan's previously granted protective custody. *Id.* ¶ 62.

On or around October 5, 2015, Mr. Morgan met with Dr. Coursen and Nurse Higgins to

discuss his mental and physical health. *Id.* ¶ 63. He allegedly told them he was not suicidal, but

was subjected to continued harassment and retaliation by various corrections officers. *Id.* ¶ 64.

Dr. Coursen and Nurse Higgins, with Corrections Officer Rivard and Lieutenant Conger,

allegedly placed Mr. Morgan "on level five suicide watch," which meant Mr. Morgan could not

use pens or pencils, nor did he have access to his legal mail. *Id.* ¶ 65. "Defendants also

threatened to cut off [his] penis and slice his throat if he continued filing complaints and

grievances." *Id.* Mr. Morgan believes that his placement on suicide watch was to prevent the

"continued prosecution of his lawsuit" and the "filing [of] further complaints or grievances . . . ."

*Id.* ¶ 66.

While at Corrigan-Radgowski, Mr. Morgan allegedly sought help from Inmates' Legal

Aid Program attorneys. *Id.* ¶ 67. He was not satisfied with their representation and allegedly

wrote complaints against them, claiming he allegedly was "denied adequate and meaningful

access to the courts." *Id.* Some of these attorneys allegedly "refused to assist [Mr. Morgan] with

his lawsuits because certain Defendants . . . falsely told the attorneys that [he] was a pedophile."

*Id.* ¶ 68.

From around May 2015 to July 2015, while at the medical ward for diabetes testing, Mr.

Morgan alleges Corrections Officer Morin "allowed other inmates . . . to enter [Mr. Morgan's]

cell and remove and read [his] personal and confidential legal documents." *Id.* ¶ 69. He allegedly reported this to Deputy Warden Zegarzewski, Captain Shebanas, and Warden Santiago." *Id.* ¶ 71.

In July 2015, Mr. Morgan again allegedly "informed Deputy Warden Zegarzewski, Warden Santiago and Commissioner Semple about the continued playing of the day room television at extremely loud volumes." *Id.* ¶ 73. Corrections staff allegedly searched Mr. Morgan's personal property; Corrections Officers Rivard, Comtois, and Senita "even obtained a picture from [Mr. Morgan's] cell of a Mrs. Evelyn Gray and her family." *Id.* Mr. Morgan allegedly "was also in the picture as these were friends of his from Church." *Id.* The three corrections officers allegedly showed the picture to Corrections Officer Williams, the sister of Ms. Gray. *Id.* ¶ 74. They allegedly told Corrections Officer Williams that Mr. Morgan was a pedophile to disparage him and to "plac[e] Plaintiff's life and safety in danger." *Id.*

In September 2015, while assigned to the Restrictive Housing Unit, Mr. Morgan alleges that Corrections Officers Rivard, Comtois, and Senita "placed listening and recording devices and other technology in Plaintiff's cell in order to see and read his confidential legal documents and retrieve other private information." *Id.* ¶ 75. Mr. Morgan again allegedly reported this to "Lieutenant Conger, Captain Shebanas, Deputy Warden Zegarzewski and Warden Santiago, all of whom [allegedly] took no action to protect Plaintiff's privacy." *Id.* ¶ 76.

Mr. Morgan alleges harassment and discrimination because of his sexual identity and orientation. *Id.* ¶ 77. On several occasions, Corrections Officer Fulcher allegedly "made discriminatory remarks about [Mr. Morgan's] sexuality" in the presence of other inmates and corrections officers. *Id.* ¶ 78. During one specific instance, Corrections Officer Fulcher allegedly shouted "you can't get shit from me you fucking homo, you faggot[,]" allegedly "for the express purpose of placing [Mr. Morgan's] safety in jeopardy and to harass and retaliate" against him. *Id.*

8

¶ 79. He allegedly repeatedly referred to Mr. Morgan as a "fucking homo" and a "faggot," and improperly entered Mr. Morgan's cell to read his confidential legal documents. *Id.* ¶ 80.

Mr. Morgan alleges he reported the discriminatory acts to Lieutenant Conger, "but Lieutenant Conger failed to take any steps to put a stop to the discriminatory treatment [Mr. Morgan] continued to suffer at the hands of Corrections Officer Fulcher." *Id.* ¶ 81. He again allegedly reported Corrections Officer Fulcher's actions to Warden Santiago, "when Warden Santiago toured [Mr. Morgan's] segregation unit." *Id.* ¶ 82. Warden Santiago allegedly "took no steps to put an end to the harassment and discriminatory acts" of Corrections Officer Fulcher. *Id.*

Mr. Morgan also alleges that he intended "to use his allotted legal phone calls or other means of communication" to report the retaliation and harassment to Connecticut State Police, the Department of Justice, and the Federal Bureau of Investigations. *Id.* ¶ 83. "However, his right to use his two legal phone calls or otherwise communicate [allegedly] was not granted." *Id.* He filed several complaints about this to Commissioner Semple, Warden Santiago, and Deputy Commissioner Rinaldi, but they "failed to take any steps to address [his] concerns." *Id.* ¶ 84. Mr. Morgan further alleges that "Commissioner Semple, Warden Santiago, and Deputy Commissioner Rinaldi created rules and regulations, and [policies] and procedures that denied [Mr. Morgan" of his right to "two legal phone calls" per month "or to otherwise communicate with judicial and law enforcement agencies." *Id.* ¶ 85.

### B.  Procedural History

The Court assumes familiarity with the case and summarizes only the procedural history relevant to the pending motion.

On June 21, 2019, Plaintiff filed a second amended Complaint against Defendants Comitors, Conger, Coursen, Fulcher, Higgins, Morin, Rinaldi, Rivard, Santiago, Scully, Semple, Senita, Shabanas, Weglarz, and Zegarzewski. Second Am. Compl.

On October 21, 2019, Defendants timely filed a motion to dismiss the second amended complaint. Mot.; Supp. Mem., ECF No. 114-1 (Oct. 21, 2019) ("Defs.' Mem.").

On January 10, 2020, Plaintiff timely filed an objection to the motion to dismiss. Obj., ECF No. 128 (Jan. 10, 2020).

On February 7, 2020, Defendants timely filed a reply. Reply, ECF No. 134 (Feb. 7, 2020).

On April 16, 2020, the Court held a telephonic motion hearing. Minute Entry, ECF No. 144 (Apr. 16, 2020).

## II.   STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III.    DISCUSSION

#### A.  Official Capacity Claims

The Eleventh Amendment divests the district court of subject matter jurisdiction over claims for money damages against state officials acting in their official capacities unless the state has waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). The Connecticut Supreme Court has held that the doctrine of sovereign immunity protects the state and state officials in their official capacities from lawsuits seeking monetary damages, unless the plaintiff obtains a waiver from the claims commissioner prior to bringing the action against the state or state officials in their official capacities. *Miller v. Egan*, 265 Conn. 301, 313–18 (2003) (exempting declaratory and injunctive relief from sovereign immunity and explaining the Connecticut legislature has required authorization by the claims commissioner or another statutory provision).

Defendants argue that Mr. Morgan only seeks money damages and that the "Eleventh Amendment bars claims for damages against a state official in his or her official capacity unless the state has waived this immunity or Congress has abrogated it." Defs.' Mem. at 11. Because, in their view, neither Connecticut nor Section 1983abrogate sovereign immunity, all claims against Defendants in their official capacities must be dismissed. *Id.*

Mr. Morgan argues that because the Court found his First Amendment retaliation, deliberate indifference to safety, denial of equal protection, and right to privacy claims sufficient in its initial review order, the Court should deny the motion to dismiss those claims. Pl.'s Mem.

12

at 3; *see also* Ruling on Plaintiff's Motion to Amend and Initial Review Order, ECF No. 13

(Aug. 23, 2016) ("Ruling and IRO").[1]

      The Court disagrees.

       Mr. Morgan has presented no Connecticut statute which abrogates sovereign immunity

in this instance. *See Green v. Martin*, 224 F. Supp. 3d 154, 163 (D. Conn. 2016) (dismissing

official capacity claims because Section 1983 does not abrogate state sovereign immunity nor

did defendant "allege[] any facts suggesting that Connecticut has waived this immunity").

      Accordingly, all claims against Defendants in their official capacities are dismissed.

### B.  The Newly Added Claims in the Second Amended Complaint

      The Federal Rules of Civil Procedure permit relation back of an amendment to an earlier

pleading when "the amendment asserts a claim or defense that arose out of the conduct,

transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R.

Civ. P. 15(c)(1)(B). The amended pleading could relate back to the date of the original pleading

in certain circumstances, and allow the addition of a party or claim even after the relevant statute

of limitations has run.

      Rule 15 permits pleadings to relate back when a defendant "(i) received such notice of

the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have

known that the action would have been brought against it, but for a mistake concerning the

party's identify." Fed. R. Civ. P. 15(c)(1)(C)(i-ii).

---

[1] In their reply, Defendants make a universal argument that the motion to dismiss was not improper simply because of the Court's previous decision in its Ruling & IRO. Reply at 1. In response to an IRO, Defendants "may respond by either filing an answer or a motion to dismiss . . . ." *Id.* In response to the second amended Complaint, Defendants "have properly presented arguments focused on deficiencies in [Plaintiff's] allegations supposedly supporting his various legal claims." *Id.* at 2. In their view, the motion to dismiss is proper. The Court agrees.

"[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Lehman XS Tr., Series 2006-GP2 by U.S. Bank Nat'l Ass'n v. GreenPoint Mortg. Funding, Inc.*, 916 F. 3d 116, 128 (2d Cir. 2019) (internal quotation marks omitted). "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (emphasis in the original).

Defendants argue that Mr. Morgan presents four new claims that do not "relate back" to the original complaint: (1) "that Defendants Rivard, Comitos, and Senita informed attorneys with the inmate legal assistance program that [he] was a pedophile[;]" (2) "that Defendant Zegarzewski created policies and procedures that prevented him from contacting legal authorities regarding his complaints[;]" (3) that he "'made several complaints about his inability to use his two legal phone calls or other means of communication to' Defendants Semple, Santiago, and Rinaldi, but they failed to address his concerns[;]" and (4) "that Defendant Scully undermined the plaintiff's approval for protective custody." Defs.' Mem. at 11–12.

The Court will analyze each claim in turn.

### 1.  Interference with Inmate Legal Assistance Program Attorneys

In his original Complaint, Mr. Morgan alleged that the Inmate Legal Assistance Program (ILAP) "attorneys denied him legal assistance because they believed the allegedly false statements of correctional staff that Mr. Morgan is a 'snitch' and a 'pedophile.'" Ruling & IRO at 3–4; Am. Compl., ECF No. 11 ¶¶ 29-30 (May 6, 2016). At the time, Mr. Morgan did not name which Defendants allegedly told the ILAP attorneys he was a snitch and pedophile.

14

Rule 15(c)(1)(C)(ii) is not met "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity[.]" *Krupski*, 560 U.S. at 552. The Court's analysis here is complicated by Mr. Morgan's *pro se* status at the filing of the original Complaint.

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted); *see also Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) ("It is of considerable significance that [the plaintiff] was an unrepresented incarcerated litigant and the District Court was required to construe Ceara's *pro se* pleading liberally and with 'special solicitude.'").

Mr. Morgan, however, did not allege John or Jane Doe Corrections Officers might be held liable. It is in the Second Amended Complaint that Defendants Rivard, Comitos, and Senita were put "on notice as to the conduct and transactions at issue in this action" and that they might be held liable under a related cause of action. *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 87 (2d Cir. 1999) (remanding to the district court after finding the amended complaint related back to the conduct and transactions in the original complaint).

Taking into consideration Mr. Morgan's *pro se* status as well as the Defendants' interest, the Court must consider whether allowing this claim to proceed would unduly prejudice Defendants. "Where a party seeks to add an additional claim, evaluation of prejudice requires consideration of whether the new claim would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (ii) prevent the plaintiff from bringing a timely action in another

jurisdiction.'" *Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 385

(D. Conn. 2008) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344, 250 (2d Cir. 1993)).

Discovery is set to close on June 26, 2020. Order, ECF No. 133 (Feb. 4, 2020). Given the

procedural posture of the case, allowing the claim to proceed would unduly prejudice

Defendants. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725

(2d Cir. 2010) (finding a district court was correct in denying "the plaintiffs' 'belated attempt to

inject a new legal theory' into the case on grounds of undue delay and prejudice[,]" but

ultimately declining to affirm because the district court dismissed the amended complaint as

futile without specifying if "the proposed amendment fail[ed] to state a legally cognizable claim

or fail[ed] to raise triable issues of fact"); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d

442, 446 (2d Cir. 1985) (affirming the district court's denial of a motion to amend where new

counsel "discovered the information that formed the basis of [plaintiff's] new proposed claim"

because it was "an insufficient reason for prejudicing [the defendant] by forcing [the defendant]

to proceed to trial, post-discovery, on a new complaint").

Accordingly, the claims related to Defendants Rivard, Comitos, and Senita informing

ILAP attorneys that Mr. Morgan was a snitch or pedophile will be dismissed.

### 2. Defendant Zegarzewski

Mr. Morgan also now alleges that Defendant Zegarzewski "created policies and

procedures that prevented him from contacting legal authorities regarding complaints." Defs.'

Mem. at 11. In his original complaint, Mr. Morgan alleged he filed "several complaints and

grievances against correctional officers to Defendant Zegarzewski with no response." Pl.'s Mem.

at 6. He now contends that "[t]hese complaints and grievances potentially contained allegations

that correctional officers were preventing him from contacting legal authorities about violations of his constitutional rights" and that the claim related to policies and procedures flows from that.

The Court disagrees.

Even if this claim could be construed to relate back to the original Complaint, the factual allegations are entirely conclusory as to Defendant Zegarzewski. *See Adams v. City of New Haven*, No. 3:14-cv-00778 (JAM), 2015 WL 1566177, at *4 (D. Conn. Apr. 8, 2015) (dismissing a failure to train claim where plaintiff did "not provide any facts that would allow the court to infer what city policies, practices, or customs contributed to or caused the deficiency" (quoting *Simms v. City of New York*, No. 10-CV-3420 (NGG)(RML), 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011)). Because the claim is insufficiently pled, the Court need not consider whether it would relate back. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)).

Accordingly, the claim will be dismissed.

### 3. Defendants Semple, Santiago, and Rinaldi and Legal Phone Calls

Mr. Morgan alleges that his original Complaint "alleged that Defendants Semple, Santiago, and Rinaldi created policies and procedures that denied him his right to his two legal calls a month." Pl.'s Mem. at 6 (citing Compl. ¶ 40). Paragraph 40 of the original Complaint and the second amended Complaint do not contain references to this claim.

Accordingly, it will be dismissed.

### 4.  Defendant Scully and Protective Custody

Similarly as he did with the claim against Defendants Rivard, Comitos, and Senita, Mr.

Morgan argues that this is not a new claim because "[a]lthough Plaintiff did not include

Defendant Scully, he was put on notice . . . ." Pl.'s Mem. at 6.

Defendant Scully, however, could not "have known that, *but for a mistake of identity*, the

original actions would have been brought against" him. *Cotto v. City of N.Y.*, 17-2845, 2020 WL

1228765, at *2 (2d Cir. 2020) (emphasis in original). Nothing in the initial Complaint suggests

that Defendant Scully should have known that the vague reference to corrections officers

interfering with Mr. Morgan's approval for protective custody referred to him or that "the

lawsuit should have been brought against him" on this claim. *Id.*; *see also Hogan v. Fischer*, 738

F.3d 509, 517 (2d Cir. 2013) ("Generally, John Doe pleadings cannot be used to circumvent

statutes of limitations because replacing a John Doe with a named party in effect constitutes a

change in the party sued. John Doe substitutions, then, may only be accomplished when all the

specifications of Fed. R. Civ. P. 15(c) are met." (internal quotation marks and citations omitted)).

Accordingly, Mr. Morgan's claim of interference with ILAP, his claim that Defendant

Zegarzewski prevented him from contacting legal authorities, his claim that Defendants Semple,

Santiago, and Rinaldi created policies and procedures which interfered with his legal phone calls,

and his claim against Detective Scully will be dismissed.

### C.  The First Amendment Claim – Free Speech

"[I]nmates must have a reasonable opportunity to seek and receive the assistance of

attorneys." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), *overruled on other grounds by*

*Thornburgh v. Abbott*, 490 U.S. 401 (1989).  "Although prisoners have a right to access counsel

from prison, they have no right to unlimited telephone calls . . . ." *Fisher v. Dep't of Corrs.*, 92

Civ. 6027 (LAP), 1995 WL 608379, at *7 (S.D.N.Y. Oct. 16, 1995) (quoting *Bellamy v. McKines*, 692 F. Supp. 205, 214 (S.D.N.Y. 1988)).

An inmate's access to counsel by telephone may be limited, as long as other methods of access to counsel are available. *Bellamy*, 692 F. Supp. at 214. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)). "[T]o succeed on [a] claim that the right [to seek and receive assistance of attorneys] was violated, [a plaintiff] must show that [a] [d]efendant's conduct deprived him of access to court or to counsel and that his deprivation unfairly prejudiced his case." *Brown v. Brabazon*, 94 CIV. 2600 (RWS), 1998 WL 177612, at *2 (E.D.N.Y. Apr. 13, 1998).

Defendants move to dismiss both alleged violations of Mr. Morgan's First Amendment rights: (1) retaliation for the grievances and complaints allegedly conducted by Defendants Rivard, Comitos, Senita, Weglarz, Scully, Fulcher, Morin, Coursen, Higgens, Congers, Shabanas, and Zegarzewski; and (2) the actions taken by Defendants Semple, Rinaldi, Santiago, Zegarzewski, and Morin to prevent Mr. Morgan from contacting the Connecticut State Police, Department of Justice, and FBI. Defs.' Mem. at 7.

Defendants argue that as there is no "constitutional right to press criminal charges or to a criminal investigation[,]" and Mr. Morgan's First Amendment claim premised on his inability to contact authorities fails as a matter of law. *Id.* at 13 (citing *Johnson v. Ruiz*, No. 3:11-cv-542 (JCH), 2012 WL 90159, at *4–5 (D. Conn. Jan. 10, 2012). Furthermore, even if the conduct was constitutionally protected, Defendants contend that the allegations are conclusory and fail to state a claim for relief. *Id.* at 14.

As to Mr. Morgan's claim that Defendants interfered with his ability to make two legal phone calls, Defendants argue that the rights of inmates are limited while incarcerated and that prison restrictions on speech may be valid if they support a penological interest. *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Because prison administrators have latitude to make these decisions and because Mr. Morgan makes conclusory allegations, Defendants submit that this claim should also be dismissed. *Id.* at 14–15.

With regard to Mr. Morgan's claim that Defendants Semple, Rinaldi, Santiago and Zegarzewski created policies and procedures that interfered with his right to report the harassment the endured to the authorities, Defendants argue Mr. Morgan "fail[s] to include any factual allegations even describing said policies or customs, how the defendants were involved in creating them, or how they prevented [Mr. Morgan] from exercising a constitutional right in light of existing jurisprudence regarding an inmate's rights to free speech." *Id.* at 16.

Mr. Morgan argues that his attempts to contact the authorities to report the harassment and retaliation he suffered "was a proper exercise of his First Amendment rights." Pl.'s Mem. at 8. In his view, Defendants mischaracterize Mr. Morgan's efforts as a claim for a failure to prosecute, *id.* at 8, when in fact, he has alleged "that Defendants denied his right to petition the government for redress of his grievances[,]" *id.* at 9. Mr. Morgan also notes that the Court's Initial Review Order found he had sufficiently alleged facts to support a First Amendment claim and the fact that Mr. Morgan was able to write one letter to the Connecticut State Police does not defeat his claim. *Id.* at 10; *see generally* Ruling & IRO.

In their reply, Defendants argue that preventing Mr. Morgan from contacting authorities does not constitute a constitutional violation and, even if it was, Mr. Morgan "failed to adequately set forth a constitutional claim by allegedly being prevented from contacting

20

authorities to report criminal activity." Reply at 2–3. His claim that Defendants created policies which prevented him from contacting authorities is conclusory as it fails "to offer any specificity [] beyond a recitation of the elements of his claim[.]" *Id.* at 3. Finally, Defendants refer to Mr. Morgan's letter to the Connecticut State Police to demonstrate his claim that he was prevented from communicating with authorities because of a vague policy is implausible, and demonstrates "that he was able to contact authorities via some method of communication, albeit not in the way he apparently preferred[.]" *Id.* at 4 (emphasis omitted).

The Court will consider Mr. Morgan's First Amendment retaliation claim below, and now only addresses the claim that he was prevented from contacting authorities and from using his two legal phone calls.[2]

Mr. Morgan does not allege that Commissioner Semple, Warden Santiago, and Deputy Commissioner Rinaldi were personally involved in depriving him of his two legal phone calls, but instead attempts to hold them accountable by failing to remedy his complaints. Pl.'s Mem. at 8. According to Mr. Morgan, this failure to remedy is "akin to creat[ing] rules and regulations, and policies and procedures" to deny him of his right to two legal phone calls. *Id.*

Furthermore, Mr. Morgan alleges that he was not allowed to use his legal phone calls to call the authorities, not that he was not permitted to call counsel. Second Am. Compl. at 18 ¶ 86. He has not alleged that he has suffered injury as a result or even that he was deprived of the opportunity to consult or speak with counsel. *See O'dell'bey v. Semple*, No. 3:19-cv-00304 (JAM), 2020 WL 127698 (D. Conn. Jan. 10, 2020) (allowing plaintiff to amend his complaint and his Sixth Amendment right to counsel claim "to state specifically how the restrictions on his legal telephone calls or law library access frustrated his defense").

---

[2] Mr. Morgan also alleges that Defendant Morin specifically prevented him "from contacting the State Police by letter." Compl. ¶ 86. Without more specific factual allegations, this claim fails.

Accordingly, his First Amendment claim related to his two legal phone calls will be dismissed.

### D.  Deliberate Indifference Claim

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks omitted); *see also Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("The Eighth Amendment . . . imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners." (internal quotation marks omitted)). "[U]nder 41 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with 'deliberate indifference' to the safety of the inmate." *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996). Mere negligence is insufficient to demonstrate deliberate indifference. *Id.*

To establish an Eighth Amendment violation for either failure to protect or deliberate indifference to safety, an incarcerated plaintiff must show first, "that [the plaintiff] is incarcerated under conditions posing a substantial risk of serious harm," and second, that the prison official had a "sufficiently culpable state of mind," which in "prisoner-conditions cases" is "one of deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (internal quotation marks omitted); *see also Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (citing *Hayes*, 84 F.3d at 620). "[A] prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 847). While "individuals in state custody . . . have a right to be free from psychological, and emotional harm . . .  not all bodily harm caused by a government actor is actionable as a

constitutional violation." *West v. Whitehead*, No. 04-CV-9283 (KMK), 2008 WL 4201130, at

*14 (S.D.N.Y. Sept. 11, 2008) (citations omitted). But "'[p]ain' in its ordinary meaning surely

includes a notion of psychological harm." *Hudson v. McMillian*, 503 U.S. 1, 16 (1992)

(Blackmun, J., concurring). "Under certain circumstances, the intentional infliction of

psychological pain may constitute an Eighth Amendment violation so long as the pain is not *de

minimis*." *Aziz Zarif Shabazz v. Pico*, 944 F. Supp. 460, 475 (S.D.N.Y. 1998).

"To prove . . . deliberate indifference, the plaintiff must show that the need for more or

better supervision to protect against constitutional violations was obvious." *Vann v. City of N.Y.*,

72 F.3d 1040, 1049 (2d Cir. 1995) (citation omitted). "An obvious need may be demonstrated

through proof of repeated complaints of civil rights violations; deliberate indifference may be

inferred if the complaints are followed by no meaningful attempt on the part of the municipality

to investigate or to forestall further incidents." *Id.* (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941

F.2d 119, 123 (2d Cir. 1991), and *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir.

1986)).

The Second Circuit has recognized that "actions that transgress today's broad idealistic

concepts of dignity, civilized standards, humanity, and decency" are barred under the Eighth

Amendment's protection against the unnecessary and wanton infliction of pain. *Campbell v.

Gardiner*, 2014 WL 906160, at *3 (W.D.N.Y. Mar. 7, 2014) (internal quotation marks omitted)

(citing *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), and *Hutto v. Finney*, 437 U.S. 678,

685 (1978)). Labeling an inmate as an informant or a snitch can satisfy the first prong of the

deliberate indifference standard. *Id.* at *4 (collecting cases).

"[A] supervisor may be found liable for his deliberate indifference to the rights of others

by his failure to act on information indicating unconstitutional acts were occurring or for his

gross negligence in failing to supervise his subordinates who commit such wrongful acts,

provided that [a] plaintiff can show an affirmative causal link between the supervisor's inaction

and her injury." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). A supervisory defendant's

personal involvement may be shown by the following:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference to the rights of inmates by failing
> to act on information indicating that unconstitutional acts were
> occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319,

323–24 (2d Cir. 1986)).

Defendants argue that both of Mr. Morgan's deliberate indifference claims fail: (1) that

Defendants Rivard, Comitos, Senita, Weglarz, Scully, Fulcher, Morin, Coursen, and Higgins

"were deliberately indifferent to [Mr. Morgan's] safety . . . 'by referring to [him] as a snitch, rat,

and pedophile on multiple occasions in the presence of other inmates[;]'" and (2) that Defendants

Semple, Rinaldi, Santiago, Zegarzewski, Shabanas, and Conger "were deliberately indifferent to

[Mr. Morgan's] safety because they were made aware of the other defendants' conduct . . . and

failed to protect the plaintiff." Defs.' Mem. at 18.

While labeling an inmate a "snitch" may pose a substantial risk of serious harm, in

Defendants' view, Mr. Morgan has failed to allege that he suffered actual physical harm. *Id.* at

19. In their view, Mr. Morgan does not even allege facts that support "an inference that the threat

of physical injury was imminent[.]" *Id.* at 20 (citing *Dawes v. Walker*, 239 F.3d 489, 494 (2d Cir.

2001)). With respect to Defendants Coursen, Higgins, Semple, and Rinaldi, the Defendants

contend that Mr. Morgan fails to allege that Defendants Coursen or Higgins told other inmates he was a pedophile or that Defendants Semple or Rinaldi ever labeled him a snitch, pedophile, or homosexual. *Id.* at 22.

In Defendants' view, because Mr. Morgan has not alleged physical harm or the imminent threat of physical injury, his deliberate indifference claim should be dismissed. *Id.* at 21.

Mr. Morgan argues that the Court previously found his deliberate indifference claims sufficient, Pl.'s Mem. at 12 (citing Ruling & IRO), and that the Second Circuit has "recognized that labelling an inmate a snitch or rat increases the likelihood that the inmate will suffer violence," *Id.* at 13. He contends that his allegations against Defendants Coursen and Higgins are sufficient because he alleges they identified him as a pedophile "which led to the cancellation of Plaintiff's protective custody . . . ." *Id.* Finally, Mr. Morgan notes that the Court's previous ruling allowed his deliberate indifference claim to proceed against Defendants Semple and Rinaldi and are still adequately alleged. *Id.* at 14; Ruling & IRO at 13.

In their reply, Defendants reiterate that Mr. Morgan's deliberate indifference claim is insufficient "in the absence of allegations demonstrating actual or imminent harm." Reply at 5. Defendants also note that the same actual or imminent harm issues apply to Mr. Morgan's claims against Defendants Higgins and Coursen; specifically, labeling Mr. Morgan a snitch or pedophile does not create a risk of harm "as such reports are not alleged to have been shared with other inmates." *Id.* Nor does Mr. Morgan demonstrate he was exposed to harm when he was removed from protective custody. *Id.* at 6. Finally, Defendants argue that Mr. Morgan does not allege Defendants Semple or Rinaldi ever directly labeled him a "snitch," "rat," or "pedophile," or that he "ever complained[ed] to either [D]efendant about such conduct by others." *Id.*

The Court disagrees.

### 1.  Defendants Rivard, Comitos, Senita, Scully, Fulcher, and Morin

Mr. Morgan has adequately alleged that various Defendants referred to him as a snitch or pedophile in front of other inmates. While "[i]ntentionally exposing an inmate to the risk of harm . . . with no penological purpose is indicative of deliberate indifference" —which Mr. Morgan argues he has done—deliberate indifference also requires that "the inmate . . . allege facts from which the court can infer that he suffered physical injury or that the threat of physical injury was imminent." *Medina v. Whitehead*, 3:13-cv-885 (VLB), 2014 WL 3697886, at *2 (D. Conn. July 24, 2014) (citations omitted).

Although Mr. Morgan's allegations of psychological harm could be more specific, *see Dawes v. Walker*, 239 F.3d 489 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (plaintiff's complaint was "devoid of factual allegations that [gave] rise to an inference that [plaintiff] actually faced a serious threat" was fatal to plaintiff's Eighth Amendment claim), at this stage of the case, the Court cannot determine whether the psychological pain he experienced was more than *de minimis*. *See Aziz Zarif Shabazz*, 944 F. Supp. at 475 (recognizing that, "[u]nder certain circumstances, the intentional infliction of psychological pain may constitute an Eighth Amendment violation so long as the pain is not *de minimis*."); *see also Hudson*, 503 U.S. at 16 ("I am unaware of any precedent of this Court to the effect that psychological pain is not cognizable for constitutional purposes. If anything, our precedent is to the contrary.") (Blackmun, J., concurring) (citations omitted); *see also Charles v. Orange Cty.*, 925 F.3d 73, (2d Cir. 2019) (detainee plaintiffs would face a serious risk of physical and psychological harm, of which defendants knew or should have known, when

26

defendants failed to provide discharge planning for care and daily medication for mentally ill detainees).[3]

Accordingly, the deliberate indifference claims against these Defendants will not be dismissed.

### 2. Defendants Weglarz, Coursen and Higgins

Mr. Morgan also makes references to instances where Defendants Weglarz, Coursen, and Higgins allegedly called him a rat or snitch in front of other inmates. *See also* Second Am. Compl. at 20–21 ¶¶ 85-89 (including Defendants Coursen and Higgins in the deliberate indifference claim).[4]

For the same reasons as noted above, the Court will permit this claim to proceed beyond this stage and will review it again at the close of discovery and at the summary judgment stage.

Accordingly, Mr. Morgan's deliberate indifference claims against Defendants Weglarz, Coursen, and Higgins will not be dismissed.

### 3. Defendants Semple, Rinaldi, Santiago, Zegarzewski, Shabanas, and Conger

Mr. Morgan's claim against the supervisory Defendants Semple, Rinaldi, Santiago, Zegarzewsi, Shabanas, and Conger hinges on their alleged liability for constitutional violations

---

[3] While there appears to be limited precedent in the Second Circuit on whether psychological harm suffices as an "injury" for deliberate indifference requirements, other Circuits, however, have recognized that conduct which creates a substantial risk of psychological harm can violate the Eighth Amendment. *See Colbruno v. Kessler*, 928 F.3d 1155, 1162 (10th Cir. 2019) ("We have held that psychological harm, as well as physical injury, can implicate the Eighth Amendment." (citations omitted)); *Porter v. Clarke*, 923 F.3d 348, 353 (4th Cir. 2019) (affirming district court's determination that long-term detention in conditions akin to solitary confinement "created a 'substantial risk' of psychological and emotional harm and that [] [d]efendants were 'deliberately indifferent' to that risk'"); *Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) ("Evidence that the warden 'must have known' about the risk of physical or psychological harm resulting from the unsanitary conditions is sufficient for a jury to find deliberate indifference."); *Jordan v. Gardner*, 986 F.2d 1521, 1530 (9th Cir. 1993) (plaintiff-inmates established an Eighth Amendment violation as "[t]he record more than adequately supports the district court's finding of psychological harm, and the harm is sufficient to meet the constitutional minimum").

[4] The Court has included a page number reference to the Second Amended Complaint because each claim begins at paragraph 85 and thus creates duplicative numbering.

conducted by their subordinates. *See Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("[L]aw enforcement officials have an affirmative duty to intervene to protect against the infringement of constitutional rights from conduct committed by other officers in their presence." (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). Although Mr. Morgan has not alleged that any of these Defendants witnessed the alleged constitutional violations nor has he alleged that he faced actual or imminent harm, *see Chambers v. Johnpierre*, 2015 WL 4751134, at *7 (D. Conn. Aug. 11, 2015) ("To sustain a claim of failure to protect based on comments indicating that an inmate is an informant, the inmate must allege that he faced 'actual or imminent harm.'" (citing *Hamilton v. Fischer*, No. 6:12-CV-6449 (MAT), 2013 WL 3784153, at *15 (W.D.N.Y. July 18, 2013)), at this stage of the case before the completion of discovery, the Court cannot determine the extent to which Defendants Semple, Rinaldi, Santiago, Zegarzewski, Shabanas, and Conger were aware of the comments made by corrections officers, or if Mr. Morgan's psychological harm was more than *de minimis*. Dismissal at this time therefore would be premature.

Accordingly, Mr. Morgan's claim for deliberate indifference against these Defendants will not be dismissed.

### E.  The First Amendment Claim – Retaliation

"The filing of prison grievances is a protected activity." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citing *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003)). "Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, 11 Civ. 631 (SRU), 2012 WL 2716355, at *6 (D. Conn. July 9, 2012). When prison officials take adverse action against an inmate, motivated by the inmate's exercise of a protected constitutional right, a section 1983 retaliation claim may be pursued. *See Friedl v. City of N.Y.*, 210 F.3d 79, 85

(2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed by the Constitution or federal laws."). "To prevail on a First Amendment retaliation claim, [a plaintiff] must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against the [prisoner], and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted); *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).

Because the filing of a grievance is a protected activity, the Court "need only consider the latter two elements." *Brandon*, 938 F.3d at 40. "In the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, 08 Civ. 941, 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)); *see also Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009) (prisoners may be required to tolerate more than average citizens before alleged retaliatory action against them is considered adverse). "The test is objective, and the plaintiff is not required to show that he was actually deterred." *Brandon*, 928 F.3d at 40.

In order to allege causation, a plaintiff must state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). Some of the factors often used to determine retaliatory motive include: (1) temporal proximity between the protected conduct and the alleged retaliatory act; (2) the prisoner's prior good disciplinary record; (3) a finding of not guilty at the

disciplinary hearing; and (4) statements by the official(s) showing motive. *Id.*; *O'Diah*, 2013 WL 1914434 at *10.

Because claims of retaliation are easily fabricated, courts consider such claims with skepticism and require that they be supported by specific facts; thus, conclusory allegations of retaliatory conduct are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

Defendants argue that retaliation claims against Defendants Shabanas, Zegarzewski, Fulcher, Conger, and Morin should be dismissed. Defs.' Mem. at 23.[5] With respect to Defendants Shabanas and Zegarzewski, in their view, Mr. Morgan does not allege any facts "suggesting that they ever took any action against the plaintiff[,]" and so the retaliation claim must be dismissed. *Id.* at 24. With respect to Defendant Morin, Defendants argue that Mr. Morgan's allegations rest entirely on Defendant Morin's alleged name-calling of snitch or pedophile. *Id.* In their view, without allegations that Defendant Morin threatened his physical safety, the allegations do "not demonstrate the necessary 'adverse action' to support the plaintiff's claim." *Id.*

Also, in Defendant's view, with respect to Defendant Fulcher, his alleged conduct— stomping on Mr. Morgan's complaint in his presence, homosexual slurs, reading Mr. Morgan's legal documents—"fail[] to qualify as conduct that 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights[,]'" requiring dismissal of the claim. *Id.* at 25 (quoting *Dawes*, 239 F.3d at 493).

With respect to Defendants Shabanas and Zegarzewski, Mr. Morgan argues that courts "have held that a person with supervisory authority can be found to be personally involved in constitutional violation [sic] 'based on the fact that the plaintiff wrote to that defendant about the

---

[5] Although Defendants move to dismiss claims against Defendant Conger, they fail to make any arguments specific to Defendant Conger's actions.

alleged violations.'" Pl.'s Mem. at 15 (quoting *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009)). As they have failed to remedy or address his complaints, in Mr. Morgan's view, Defendants Shabanas and Zegarzewski can be held liable. *Id.*

With respect to Defendant Morin, Mr. Morgan contends that calling him a snitch or pedophile can be an adverse action and Defendant Morin "exhibited a clear and repeated pattern of conduct" of retaliation. *Id.* at 15–16. With respect to Defendant Fulcher, Mr. Morgan argues that his "actions were direct and specific and a part of a concerted effort to retaliate against Plaintiff for engaging in constitutionally protected activity." *Id.* at 16.

In their reply, Defendants again argue that Mr. Morgan fails to allege facts that suggest Defendants Shabanas or Zegarzewski themselves retaliated against him. Reply at 6. That he informed them of others' actions only supports "liability under a supervisory authority theory[.]" *Id.* Additionally, his claim against Defendant Morin must fail because Mr. Morgan has "not even alleged [that Defendant Morin] made specific threats against the [P]laintiff[.]" *Id.* Nor has Mr. Morgan alleged that Defendant Morin "directly encouraged the [P]laintiff's harassment by other inmates, and the [D]efendant's calling the plaintiff a snitch actually led to [Mr. Morgan's] harm by other inmates." *Id.* at 7.

The Court agrees, in part.

Mr. Morgan has alleged that Defendants' retaliation is evident from the "verbal threats and harassment, including but not limited to labeling [him] a snitch, rat, and pedophile as well as threatening [his] physical safety" and that of his family and friends. Second Am. Compl. ¶ 87. He also alleges that this conduct began after he filed grievances and complaints about the volume of the television in the inmates' day room. *Id.* ¶ 27. Specifically, Mr. Morgan filed grievances

against Defendants Barstow, Morin, *id.*; Weglarz, *id.* ¶ 32; Fulcher, *id.* ¶ 43; Rivard, Comtois, and Senita, *id.* ¶ 47.

Mr. Morgan has also alleged that Defendant Morin referred to him as "snitch" around other inmates, Second Am. Compl. ¶ 29; told other inmates "to 'fuck him up and get his ass out of the unit'"; *id.* ¶ 30; and threatened to place contraband in his cell, i*d.* ¶ 38. These threats of encouraged violence and planting contraband are sufficient to satisfy adverse action. *See Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (affirming district court's dismissal of retaliation claim where claims of "retaliatory verbal abuse . . . [did] not include any allegations of physical harm, nor [were] they alleged with any specificity"); *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (vacating district court's decision because "the filing of false misbehavior reports against [the plaintiff] and his sentence of three weeks in keeplock . . . would deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process and the courts"); *Tuttle v. Semple*, No. 3:17-cv-02099 (JAM), 2018 WL 11658583, at *4 (D. Conn. Mar. 6, 2018) (initial review order found retaliation allegations could proceed where plaintiff alleged defendant "[stole plaintiff's] personal items from his cell and interfer[ed] with plaintiff's ability to file grievances"); *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 413 (D. Conn. 2016) (filing disciplinary reports after grievances constituted adverse action); *but see Mateo v. Fischer*, 628 F. Supp. 2d 423 (S.D.N.Y. 2010) (alleged threats by a corrections officer did not constitute adverse action). Furthermore, Mr. Morgan adequately alleges a causal connection between his filing of grievances and the adverse action. *Cf. Colon*, 58 F.3d at 873 ("circumstantial evidence" of temporal proximity is insufficient to demonstrate a causal connection on a motion for summary judgment).

32

Mr. Morgan alleges that Defendant Fulcher engaged in a pattern of harassment and retaliation and "went so far as to retrieve Plaintiff's complaint and stomp upon it in Plaintiff's presence[,]" Second Am. Compl. ¶ 46, and made discriminatory remarks about Mr. Morgan's sexuality in front of other inmates and corrections officers, including shouting "you can't get shit from me you fucking homo, you faggot[,]" *id.* ¶¶78–79. Mr. Morgan does not allege the threat of harm, injury, or violence. But some, although not all, verbal threats can constitute adverse action. *Mateo*, 682 F. Supp. 2d at 424 (citations omitted). "The less direct and specific a threat, the less likely it will deter an inmate from exercising his First Amendment rights." *Id.* Here, Defendant Fulcher's are vulgar and discriminatory, but not threatening. *See Davis*, 320 F.3d at 353 ("[i]nsulting or disrespectful comments directed at an inmate generally do not rise" to the level of adverse action); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 373 (S.D.N.Y. 2011) ("An inmate has no right to redress simply because an officer made a hostile or derogatory comment about him." (internal quotation marks, alteration, and citation omitted)).

Furthermore, even if Mr. Morgan could allege a causal connection, Defendant Fulcher's conduct in stepping on Mr. Morgan's complaint, without allegations that he would prevent Mr. Morgan from filing grievances in the future, does not rise to the level of adverse action. *See Baltas v. Rivera*, No. 3:19-cv-1043 (MPS), 2019 WL 3944435, at *6 (D. Conn. Aug. 21, 2019) (plaintiff allegations "that he was told to stop filing grievances because nothing would be done and that he was threatened for filing grievances" supported a retaliation claim).

Mr. Morgan does not allege that Defendants Shabanas or Zegarzewski retaliated against him, but rather that their failure to act renders them liable. Because Mr. Morgan has not alleged Defendants Shabanas or Zegarzewski retaliated against him, his claim fails. As supervisors, they "are not automatically liable under section 1983 when their subordinates commit a constitutional

tort." *Dorlette v. Quiros*, No. 3:10-cv-615 (AWT), 2012 WL 4481455, at *3 (D. Conn. Sept. 26, 2012). In addition, Mr. Morgan "must demonstrate an affirmative causal link between the supervisory official's failure to act and his injury." *Id.* (citing *Poe*, 282 F.3d at 140). Mr. Morgan has not alleged injury and so, lacks a causal connection with Defendants Shabanas and Zegarzewski, which would render them liable for their failure to act.

Accordingly, the retaliation claim against Defendants Shabanas, Zegarzewski, and Fulcher are dismissed. The retaliation claim against Defendant Morin, however, will proceed.

Because Defendants do not move to dismiss the retaliation claims against Defendants Rivard, Comitos, Senita, Weglarz, Scully, Conger, Coursen, and Higgins, the retaliation claim against these Defendants also will proceed.

### F.  Harassment Claim

The Court previously denied Mr. Morgan's motion to reconsider his harassment claim. Order, ECF No. 137 (Feb. 24, 2020) ("Order on Mot. to Reconsider"). As his harassment claim is no longer part of this lawsuit, the Court will not now consider Defendants' arguments regarding the harassment claim.

### G.  Violations of Right to Privacy

The Supreme Court has held that "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson*, 468 U.S. at 526. "[A] convicted prisoner's loss of privacy rights can be justified on grounds other than institutional security." *Willis v. Artuz*, 301 F.3d 65, 69 (2d Cir. 2002). "As such, inmates do not have the right to be free from searches of any kind; even searches conducted 'solely for

harassment' do not implicate the Fourth Amendment." *West v. City of N.Y.*, No. 13 Civ. 5155(PAE), 2014 WL 4290813, at \*6 (S.D.N.Y. Aug. 28, 2014) (citing *Willis*, 301 F.3d at 68).[6]

Defendants argue that, as an incarcerated individual, Mr. Morgan does "not have a reasonable expectation of privacy in his prison cell." Defs.' Mem. at 30 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)). Because of this, Mr. Morgan's claim that Defendants Morin, Rivard, Comitos, Senita, and Fulcher violated his right to privacy must be dismissed. *Id.* at 29–30.

Mr. Morgan argues that he "has pled facts sufficient to establish that the searches of his cell and subsequent seizures were not for legitimate prison security-related reasons." Pl.'s Mem. at 28. Of the searches that allegedly occurred, some included searching through personal property and reading his confidential legal documents. *Id.* In his view, the "searches were retaliatory in nature and purposefully designed to violate Plaintiff's privacy interest in his grievances and legal documents." *Id.* He also notes that the Court previously found he had adequately alleged facts to establish a privacy claim. *Id.* at 29 (citing Ruling & IRO).

In their reply, Defendants cite to Supreme Court precedent which rejects both "the concept that an inmate maintains a reasonable expectation of privacy in his cell and, therefore, a right against unreasonable searches" and "the concept that an inmate retains a right against unreasonable seizure[.]" Reply at 8 (citing *Hudson v. Palmer*, 468 U.S. 517, 526, 528 n.8 (1984)). Defendants thus argue that these claims should be dismissed. *Id.*

The Court agrees.

---

[6] The Court also notes that the cell search cannot be the basis of a First Amendment retaliation claim. *See Davis v. Collado*, 2018 WL 4757966, at \*12 (S.D.N.Y. Sept. 30, 2018) (finding retaliatory cell searches do not violate the Constitution or support a federal claim).

The Court previously dismissed Mr. Morgan's Fourth Amendment claim with respect to the search of his cell, but permitted the Fourth Amendment claim to proceed because he still maintained a privacy interest in his legal documents and grievances. Ruling & IRO at 17. Mr. Morgan relies on *Seattle Times Co. v. Rhinehart* for the proposition that he maintained a privacy interest in his legal documents and grievances. 467 U.S. 20, 35 n. 21 (1984). The issue in *Seattle Times* concerned the dissemination of information gained in the discovery process before trial and the district court's standing protective order in place. *Id.* at 23. The footnote Plaintiff relies on relates to the discovery process and Federal Rule of Civil Procedure 26. *Id.* at 35 n.21 ("Although the Rule contains no specific reference to privacy or other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the rule.").

Mr. Morgan alleges that legal documents and grievances were searched, read, and distributed. While Mr. Morgan maintains a privacy interest in his legal documents, it is not clear that this privacy right is protected by the Fourth Amendment. Nor is it clear what injury Mr. Morgan suffered and if that injury would implicate the Fourth Amendment. Mr. Morgan refers only to *Seattle Times* and points to no other precedent to support his claimed privacy interest.[7]

Because Mr. Morgan retains no expectation of privacy in his prison cell and has not clearly alleged the privacy interest violated, his Fourth Amendment claim is dismissed with prejudice. *See Griffin v. Komenecky,* 133 F.3d 907 (2d Cir. 1998) (finding the plaintiff's "assertion that his constitutional rights were violated by [the] search does not state a claim under 42 U.S.C. § 1983 because the Fourth Amendment's proscription against unreasonable searches does not apply to searches of a prison cell"); *Lopez v. Lantz,* No. 3:09-cv-22 (CSH), 2010 WL

---

[7] While "the loss of a prisoner's constitutional right against unreasonable searches 'is occasioned only by the *legitimate* needs of institutional security," that claim is properly brought as a harassment claim. *Willis*, 301 F.3d at 67 (emphasis in the original) (quoting *U.S. v. Cohen*, 796 F.2d 20, 23 (2d Cir. 1986)). The Court has already dismissed Mr. Morgan's harassment claim. Ruling & IRO at 17–18; Order on Mot. to Reconsider.

965747, at *4 (D. Conn. Mar. 12, 2010) (finding that a search that confiscated documents associated with an incident report or grievance was not a violation of the Fourth Amendment).

### H.  The Discrimination Claims

#### 1.  The Equal Protection Clause Claim

The Fourteenth Amendment's Equal Protection Clause protects individuals from invidious discrimination. This provision does not mandate identical treatment for each individual; rather it requires that similarly situated persons be treated the same. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a plaintiff must allege facts showing that the plaintiff was treated differently from similarly situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

To state a valid claim under a "class of one," a prisoner-plaintiff must allege that: (1) he has been intentionally treated differently than other similarly situated inmates; and (2) there is no rational basis for the disparity in treatment. *Holmes v. Haugen*, 356 F. App'x 507, 509 (2d Cir. 2009); *Green v. Martin*, 224 F. Supp. 3d 154, 171 (D. Conn. Dec. 14, 2016). Second, a plaintiff must allege an "extremely high" level of similarity with the person to whom he is comparing himself; their circumstances must be "prima facie identical." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *rev'd on other grounds*, *Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008). "The Second Circuit has concluded that homosexuality is a 'quasi-suspect (rather than [a] suspect)' class and discriminatory treatment of the class is subject to 'intermediate judicial

review.'" *Trowell v. Theodarakis*, 2018 WL 3233140, at *4 (D. Conn. July 2, 2018) (quoting

*Windsor v. U.S.*, 699 F.3d 169, 185 (2d Cir. 2012), *aff'd on other grounds*, 570 U.S. 744 (2013)).

Defendants Fulcher, Conger, and Santiago argue that Mr. Morgan's equal protection

claim must fail because Mr. Morgan does not allege facts that support such a claim. Defs.' Mem.

at 31. The "use of derogatory slurs does not support an equal protection claim," nor does Mr.

Morgan "allege any factual basis to demonstrate disparate treatment of other similarly situated

individuals." *Id.* at 32.

Mr. Morgan argues that he "was singled out among other similarly situated inmates and

given selective negative treatment in the form of harassment and abuse because of his sexual

orientation." Pl.'s Mem. at 30. Specifically, he argues that Defendant Fulcher's actions "were

motivated by discriminatory animus" based on Mr. Morgan's sexual orientation, which led to

harassment and retaliation by searching his cell and reading his legal documents. *Id.* Again, Mr.

Morgan notes the Court's previous ruling found his allegations establish an equal protection

claim. *Id.* at 31 (citing Ruling & IRO).

Mr. Morgan's claim rests on Defendant Fulcher's derogatory use of the words "homo"

and "faggot" to refer to him. Second Am. Compl. at 22 ¶ 88. Because Mr. Morgan has alleged

that he was treated differently than a similarly situated prisoner, this claim survives for now,

barely. *See Adorno v. Semple*, No. 3:16-cv-325 (MPS), 2016 WL 7469709, at *7 (D. Conn. Dec.

28, 2016) (plaintiff's equal protection claim failed in part because "the plaintiff [did] not

compare himself to any other similarly situated inmates who were treated differently"); *Vega v.*

*Artus*, 610 F. Supp. 2d 185, 209–10 (N.D.N.Y. 2009) (judgment on the pleadings granted where

plaintiff "merely allege[d] that the [] [d]efendants made harassing comments against him because

they believed that he was homosexual" but did "not allege that any of the [d]efendants . . .

subjected him to disparate treatment on the basis of his perceived homosexuality"). At the close of discovery and on a motion for summary judgment, if Mr. Morgan lacks sufficient evidence of his being "singled out among other similarly situated inmates and [being] given selective negative treatment in the form of harassment and abuse because of his sexual orientation," Pl.'s Mem. at 30, then this claim will be dismissed.

Accordingly, Mr. Morgan's equal protection claim will not be dismissed now.

### 2. Conn. Gen. Stat. § 46a-58

Connecticut General Statute § 46a-58 provides that it is a discriminatory practice "for any person to subject, or cause to be subjected, any person to the deprivation of any rights, privileges or immunities, secured or protected by the Constitution or laws of the United States, on account of . . . sexual orientation[.]" Conn. Gen. Stat. § 46a-58(a). "[T]here is no private right of action under" this statute. *Wilson v. City of Norwalk*, 507 F. Supp. 2d 199, 212 (D. Conn. 2007); *see also Garcia v. Saint Mary's Hosp.*, 46 F. Supp. 2d 140, 142 (D. Conn. 1999) ("Connecticut General Statutes Section 46a-58 does not provide for a private cause of action . . . Section 46a-58 claims can only be prosecuted through the CHRO's administrative procedures.").

Defendants Fulcher, Conger, and Santiago argue that no private right of action exists under Conn. Gen. Stat. § 46a-58. Defs.' Mem. at 31.

Based on the caselaw noted above, the Court agrees.

Accordingly, Mr. Morgan's § 46a-58 claim will be dismissed, as no private right of action exists under this statute.

### I.  Negligent Infliction of Emotional Distress Claims

For a successful negligent infliction of emotional distress claim, a plaintiff must prove: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional

distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003). In such cases, the "fear or distress experienced by the plaintiff [must] be reasonable in light of the conduct of defendants." *Id.* at 447 (citing *Barret v. Danbury Hosp.*, 232 Conn. 242, 261–62 (1995)). When that fear is reasonable, "the defendants should have realized that their conduct created an unreasonable risk of causing distress, and they, therefore, properly would be liable." *Id.* At the same time, fear that was "unreasonable in light of defendants' conduct" would not allow defendants to recognize "that their conduct could cause distress, and therefore, they would not be liable." *Id.*

It is well established that negligence claims are not cognizable for damages under § 1983. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) ("[T]he risk of harm must be substantial and the official's actions more than merely negligent."); *Chance v. Armstong*, 143 F.3d 698, 703 (2d Cir. 1998) (without more, negligence does not create a constitution claim); *Pabon v. Wright*, No. 99-CIV-2196 (WHP), 2004 WL 628784, at *5 (S.D.N.Y. Mar. 29, 2004), *aff'd*, 459 F.3d 241 (2d Cir. 2006) ("[N]egligent conduct is insufficient to satisfy the standard.").

Moreover, even if this negligence claim is not premised on § 1983, but is instead based on state law alone, negligence claims against state officials are also barred by section 4-165 of the Connecticut General Statutes. *See* Conn. Gen. Stat. § 4-165(a) ("No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment."); *see also Miller v. Egan*, 265 Conn. 301, 319 (2003) (state employees are not "personally liable for their negligent actions performed within the scope of their employment").

Wanton, reckless, or malicious, as used in § 4-165, has never been definitively determined, however, Connecticut courts have found that "the plaintiff must prove, on the part of the defendants, the existence of a state of consciousness with reference to the consequences of one's acts . . . [Such] conduct is more than negligence, more than gross negligence[.]" *Martin v. Brady*, 261 Conn. 372, 379 (2002) (citation omitted); *see also Manifold v. Ragaglia*, 94 Conn. App. 103, 115–16 (2006).

"In order to determine if a state actor's conduct is caused in the discharge of his or her duties or within the granted statutory authority, it is necessary to examine the nature of the alleged conduct and its relationship to the duties incidental to the employment." *Martin*, 261 Conn. at 377. "A state employee [can] be held personally liable acts in the scope of her employment when the employee's actions are 'wanton, reckless, or malicious'—which goes beyond negligence and denotes 'highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent.'" *Matias v. Anderson*, No. 3:18-cv-17 (SRU), 2020 WL 616443, at *4 (D. Conn. Feb. 10, 2020) (quoting *Martin*, 261 Conn. at 372, 379).

Defendants argue that "[s]tate officials are immune from negligence lawsuits under § 4-165 of the Connecticut General Statutes[.]" Defs.' Mem. at 33. Defendants also contend that Mr. Morgan has not received authorization from the Connecticut State Claims Commissioner to proceed with his suit against state officials. [8] *Id.* Consequently, Defendants assert that Mr. Morgan's negligent infliction of emotional distress claim should be dismissed.

---

[8] Conn. Gen. Stat. § 4-165b provides: "[a]ny inmate . . . who suffers an injury may file a claim against the state." Conn. Gen. Stat.§ 4-165b(a). It requires an inmate to first exhaust administrative remedies before going to the claims commissioner and requires an inmate to present their claim within a year of exhausting all administrative remedies. Conn. Gen. Stat. § 4-165b(b).

Mr. Morgan argues that "the conduct of all the Defendants constitutes negligent infliction of emotional distress because [they] 'created an unreasonable risk of causing emotional distress . . . .'" to Mr. Morgan and the emotional distress was likely to result in injury, illness, or harm. Pl.'s Mem. at 31 (quoting Second Am. Compl. ¶¶ 87–88). In his view, Defendants are only protected by statutory immunity to the extent their actions "are performed in the scope of their employment[,]" and Defendants actions here were outside the scope of employment. *Id.* at 31–32. He further argues that "the allegations of harassment and deprivation of [his] constitutional rights by the Defendants under the guise of governmental authority is sufficient to establish that the Defendants misused their governmental authority to justify abhorrent conduct falling outside the scope of their employment." *Id.*at 32–33. The conduct lacked any governmental purpose and so Mr. Morgan's claim should proceed as "statutory immunity does not shield the Defendants from the liability for such alleged conduct." *Id.* at 33.

Mr. Morgan also argues that he "had no obligation to present the negligent infliction of emotional distress claim asserted against the Defendants in their individual capacities to the Claim Commissioner" because that is only required for injury or damage caused during the "discharge of his or her duties or within the scope of his or her employment[.]" *Id.*

The Court disagrees.

The Court first notes that it has dismissed Mr. Morgan's harassment claim and, therefore, there cannot be alleged constitutional violations on these grounds. The Court furthermore finds that § 4-165 cannot provide a statutory exception for a negligent infliction of emotional distress claim. As interpreted by Connecticut courts, "wanton, reckless or malicious" conduct requires "a state of consciousness" and "is more than negligence, more than gross negligence." *Martin*, 261 Conn. 379. The statute then cannot act as a statutory exception for a negligence claim. *See also*

*Miller*, 265 Conn. at 319 ("In other words, state employees may not be held personally liable for their negligent actions performed within the scope of their employment.").

Because Mr. Morgan's negligent infliction of emotional distress claim is a negligence claim, one not permitted against state officials under Connecticut law, this claim fails.

Accordingly, the negligent infliction of emotional distress claim will be dismissed.

### J.   Intentional Infliction of Emotional Distress Claims[9]

To establish a claim of intentional infliction of emotional distress in Connecticut, a plaintiff must allege:

> (1) That the actor intended to inflict emotional distress of that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe . . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine . . . . Only where reasonable minds disagree does it become an issue for the jury.

*Geiger v. Carey*, 170 Conn. App. 459, 497 (2017) (quoting *Gagnon v. Housatonic Valley Tourism District Comm'n*, 92 Conn. App. 835, 846 (2006)).  Extreme and outrageous conduct means conduct that goes "beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210–11 (2000)). "In order to state a cognizable cause of action, [p]laintiff must not only allege each of the four elements, but must also allege facts sufficient to support them." *Golnik v. Amato*, 299 F. Supp. 2d 8 15 (D. Conn. 2003).

---

[9] The parties collapsed their arguments regarding Mr. Morgan's intentional infliction of emotional distress claim within their arguments regarding supervisory liability. The Court chooses to analyze this claim distinctly from the other instances of supervisory liability.

Defendants Semple, Rinaldi, Santiago, Zegarzewski, Shabanas, and Conger move to dismiss all claims of intentional infliction of emotional distress against them, the supervisory Defendants. Mot. at 1. In their view, Mr. Morgan fails to allege any direct participation by the supervisory defendants in the alleged conduct against him. Defs.' Mem. at 36. His allegations focus on their failure "to take affirmative action to stop the alleged constitutional violations." *Id.* He does not allege the elements required in an intentional infliction of emotional distress claim nor does he "adequately allege that these supervisory defendants inflicted emotional distress upon him." *Id.*

Mr. Morgan argues the "defendants' positions of authority over" him, "their power to significantly impact his qualify of life, and their knowledge of . . . [his] mental and emotional disorders," and because of that the Defendants' actions or omissions constitute extreme and outrageous behavior. Pl.'s Mem. at 36.

The Court agrees, in part.

Defendants Semple, Rinaldi, Santiago, Zegarzewski, Shabanas, and Conger are all supervisors and potentially liable under a theory of supervisory liability, and notably, the remaining Defendants have not moved to dismiss this claim. But, Mr. Morgan's intentional infliction of emotional distress against Defendants Semple, Rinaldi, Santiago, Zegarzewski, Shabanas, and Conger cannot proceed because he has not alleged any conduct that was directed at him or intended to infliction emotional distress upon him by these actors. *See Appleton*, 254 Conn. at 210 (the first element of an intentional infliction of emotional distress claim requires the plaintiff to establish "that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct" (quoting *Pyetan v. Elllis*, 200 Conn. 243, 253 (1986)).

44

Accordingly, the intentional infliction of emotional distress claim will be dismissed only as to Defendants Semple, Rinaldi, Santiago, Zegarzewski, Shabanas, and Conger.

### K. Supervisory Liability Claims

A plaintiff who sues a supervisory official for monetary damages must allege that the official was "personally involved" in the constitutional deprivation in one of five ways: (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official failed to take action in response to information regarding the unconstitutional conduct. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). A plaintiff must also demonstrate a causal link between the actions of the supervisory official and his injuries. *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

"[S]upervisory liability may be imposed where an official demonstrates 'gross negligence' or 'deliberate indifference' to the constitutional rights of inmates by failing to act on information indicating that unconstitutional practices are taking place." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). A plaintiff "must show that the [d]efendants were aware of, and failed to correct or stop, a constitutional violation." *Myers v. Semple*, 2019 WL 5328692, at *4 (D. Conn. Oct. 21, 2019) (citing *Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016)).

To begin, "supervisory liability cannot lie where there is no underlying constitutional violation by a subordinate." *Green v. Maldonado*, 2018 WL 2725445, at *6 (D. Conn. June 6, 2018). The only remaining claim is Mr. Morgan's retaliation claim.

Defendants argue that Mr. Morgan's allegations are overbroad and conclusory to hold Defendants Semple, Rinaldi, Santiago, Zegarzeski, Shabanas, and Conger liable under a theory of supervisory liability for the retaliation, First Amendment violations, deliberate indifference to safety claim, equal protection claim, right to privacy claim, and negligent infliction of emotional distress claim, as well as the intentional infliction of emotional distress claim. Defs.' Mem. at 34. In their view, Mr. Morgan "presents no factual allegations against these defendants to support their liability for any of the alleged violations based on direct participation, creation of policies or customs that allowed said violations to occur, or grossly negligent management of subordinates." *Id.* at 35.

According to Defendants, the supervisory liability claim is based on the "alleged failure to correct violations that they were made aware of" by Mr. Morgan. *Id.* Defendants note that Mr. Morgan never alleges "that he reported the conduct of Defendants Scully, Coursen, Higgins to any supervisory defendant, nor [did he report] . . . Defendant Morin's conduct outside of Morin's alleged violation of the right to privacy." *Id.* at n.10. They also contend that he never reported that boric acid was placed in his food. *Id.* Defendants find that Mr. Morgan's failure to adequately set forth any "factual basis to support [the] extension of liability to the supervisory defendants" is fatal to his claim. *Id.* at 36–37.

Mr. Morgan argues that the supervisory Defendants "failed to remedy a violation of his constitutional rights after learning of them through a report or appeal, or that they acted in a grossly negligent or deliberately indifferent manner by failing to respond to the violations once they were known." Pl.'s Mem. at 34. In his view, he sufficiently pled facts demonstrating that the relevant Defendants "failed to remedy the alleged constitutional violation after learning about it" through Mr. Morgan's grievances and complaints, and he submits he also pled facts

demonstrating the practices or policies created by Defendants that were unconstitutional. *Id.* at 35. He cites Second Circuit precedent that purportedly supports "that facts alleging that the supervisory Defendants' alleged failure to stop known constitutional violations against" Mr. Morgan survive a motion to dismiss. *Id.* at 38.

In their reply, Defendants argue that Mr. Morgan's "actual factual allegations absolutely do not support such broad liability." Reply at 9.

The Court disagrees.

Mr. Morgan repeatedly alleged that he filed grievances with or otherwise informed the supervisory Defendants. It is unclear the extent to which the supervisory Defendants "were even aware" of his grievances and "[t]he fact that they occupy supervisory positions is insufficient to establish their personal involvement in constitutional deprivation." *Azor v. Semple*, No. 3:19-cv-1068 (SRU), 2019 WL 4167072, at *4 (D. Conn. Sept. 3, 2019) (citing *McKinnon v. Patterson*, 568 F. 2d 930, 934 (2d Cir. 1977)). Nor does Mr. Morgan allege with sufficient specificity any policies or customs that these Defendants directed or maintained. The Court, however, finds that the extent to which the supervisory Defendants knew of Mr. Morgan's grievances and still failed to act cannot be resolved at this time.

Accordingly, Mr. Morgan's claims against the supervisory Defendants will be dismissed.

### L.  Compensatory Damages

Prisoners are required to comply with all procedural rules regarding the grievance process before filing an action in federal court. *Woodford v. Ngo*, 548 U.S. 81, 90–91, 93 (2006) (noting that "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out and doing so *properly* (so that the agency addresses the issues on the merits).'" (emphasis in the original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

Thus, completion of the exhaustion process after a prisoner has filed an action in federal court does not satisfy the exhaustion requirement. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001). Special circumstances also will not relieve an inmate of the obligation to satisfy the exhaustion requirement.

An inmate's failure to exhaust all remedies available is only excusable if the remedies are, in fact, unavailable. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Although failure to exhaust administrative remedies is an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 216 (2007), a court may dismiss a complaint for failure to state a claim when the allegations on the face of the complaint establish that it is subject to dismissal, even on the basis of an affirmative defense. *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("[A] district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement.").

Defendants argue that the Prison Litigation Reform Act (PLRA) bars the award of compensatory damages because he has not alleged physical injury. Defs.' Mem. at 37. In their view, because Mr. Morgan does not sufficiently allege physical injury, his allegations cannot provide a basis for Section 1983. *Id.* at 38.

Mr. Morgan argues he has alleged "significant psychological harm and certain physical manifestations of such harm" and that the PLRA does not bar him "from asserting claims for nominal damages due to the alleged violates [sic] of his constitutional rights." Pl.'s Mem. at 38–39. He also notes that at the time of filing of the Second Amended Complaint, Mr. Morgan was not incarcerated, but on parole, and so no longer a "prisoner" under the PLRA. *Id.* at 39.

In their reply, Defendants argue that Mr. Morgan "remains a 'prisoner' within the meaning of the PLRA because he instituted this action while incarcerated with the [Department of Correction]." Reply at 9.

The Court agrees.

When Mr. Morgan filed his Complaint and initiated this action, he was a prisoner and on parole when he filed his Second Amended Complaint. *See Gibson v. City Municipality of N.Y.*, 692 F.3d 198, 202 (2d Cir. 2012) ("[T]he relevant time at which a person must be 'a prisoner' within the meaning of the PLRA in order for the Act's restrictions to apply is 'the moment the plaintiff files his complaint.'" (quoting *Harris v. City of N.Y.*, 607 F.3d 18, 21–22 (2d Cir. 2010)). When Mr. Morgan filed his initial complaint, he was incarcerated. *Cf. Liner v. Fischer*, No. 11-CV-6711 (PAC)(JLC), 2014 WL 2880020, at *4 n.5 (S.D.N.Y. June 25, 2014) ("Although [plaintiff] was released from prison in April 2014, the 'three strikes' provision still applies to this action because the complaint was filed while [plaintiff] was incarcerated."). As a prisoner, he was then required to exhaust administrative remedies.

The exhaustion requirement is intended to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (alteration in the original) (quoting *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002)). Mr. Morgan was required to "provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Id.*

Moreover, the Second Circuit has held "that Section 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical

injury." *Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002); *see also Vega v. Lantz*, No.3:04-cv-1215 (DRM), 2009 WL 3157586, at *4 (D. Conn. Sept. 25, 2009) (compensatory damages are unavailable for mental or emotional injuries without a showing a physical injury (citing *Thompson*, 284 F.3d at 417–18)). While Mr. Morgan has alleged psychological harm and certain physical manifestations, to be eligible to receive compensatory damages Mr. Morgan must show actual physical injury. *See Toliver v. City of N.Y.*, 530 F. App'x 90, 93 n.2 (2d Cir. 2013) (even if plaintiff could not establish his injuries "stemmed from an incident in which he suffered physical injuries" he could still recover damages for injuries to his First Amendment rights and nominal and punitive damages for other constitutional violations).

Accordingly, following the close of discovery, Mr. Morgan must be able to show that he has exhausted his administrative remedies as required under Section 1997e(e) or suffered physical injury, otherwise Mr. Morgan may not be able to recover compensatory damages in this case.

## IV.    CONCLUSION

For the reasons explained above, the Court **DENIES** the motion to dismiss as to Mr. Morgan's claims for First Amendment retaliation against Defendants Morin, Rivard, Comitos, Senita, Weglarz, Scully, Conger, Coursen, and Higgins; deliberate indifference against Defendants Rivard, Comitos, Senita, Scully, Fulcher, Morin, Coursen, Higgins, Semple, Rinaldi, Santiago, Zegarzewski, Shabanas, and Conger; the claim of supervisory liability against Defendants Semple, Rinaldi, Santiago, Zegarzewski, Shebanas, and Conger; and the equal protection claim.

The Court **GRANTS** the motion to dismiss as to the Fourth Amendment claim; the claim for negligent infliction of emotional distress; and the claim for intentional infliction of emotional

distress against Defendants Rivard, Comtois, Senita, Weglarz, Scully, Fulcher, Morin, Coursen, and Higgins.

      **SO ORDERED** at Bridgeport, Connecticut, this 24th day of April, 2020.

                                          /s/ Victor A. Bolden
                                          Victor A. Bolden
                                          United States District Judge